852 F.2d 290
 48 Ed. Law Rep. 105
 Ronald LACHMAN and Mary Ann Lachman, on Behalf of Benjamin
Lachman, a minor, Plaintiffs-Appellants,
v.
ILLINOIS STATE BOARD OF EDUCATION; East Maine School
District 63; and Maine Township Special Education
Program, Defendants-Appellees.
 No. 87-2518.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 11, 1988.
Decided July 18, 1988.
 
 Richard S. Rhodes, Chadwell & Kayser, Ltd., Chicago, Ill., for plaintiffs-appellants.
 Lorence H. Slutzky, Robbins, Schwartz, Nicholas Lifton & Taylor, Ltd., Kevin R. Sido, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants-appellees.
 Before COFFEY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 Benjamin Lachman is a profoundly deaf seven-year-old child who resides within the district boundaries of the East Maine, Illinois School District No. 63 ("the school district"). The school district is a member of the Maine Township Special Education Program ("MSTEP") and through MSTEP contracts with Northern Suburban Special Education District to provide services for its hearing-impaired students through a Regional Hearing Impaired Program ("RHIP"). Since the time Benjamin became eligible for participation in the RHIP pre-school program, in September, 1984, his parents and the school district have disagreed as to the manner in which his education should be facilitated. That disagreement eventually led the Lachmans to initiate this private cause of action as provided for by Sec. 615(e)(2) of the Education for All Handicapped Children Act, 20 U.S.C. Secs. 1400-1420 ("EAHCA" or "the Act").[1]
 
 
 2
 * The Lachmans believe that Benjamin can best be educated at a neighborhood school near his home, in a regular classroom with the assistance of a full-time cued speech instructor.[2] In contrast, the school district has consistently proposed that all or at least half of Benjamin's school day be spent in a RHIP self-contained classroom with other hearing-impaired children. Those self-contained classrooms are located in schools outside Benjamin's neighborhood. The placements advocated by the school district have all incorporated components providing that, to varying degrees, Benjamin would be integrated into classes and activities with the non-hearing-impaired children in the regular classrooms at those schools. The course of education recommended by the school district centers on the use of the total communication approach to educating hearing-impaired children, which relies primarily upon sign language as a means of communication. The school district has proposed only interim utilization of the cued speech approach, to the extent necessary to effectively transition Benjamin into the total communication-based program.
 
 
 3
 In the Spring of 1986, with the approach of Benjamin's enrollment in kindergarten, the controversy between the Lachmans and the school district crystallized. Because the Lachmans did not agree with the Individualized Education Program ("IEP") that the school district proposed for Benjamin, they initiated the due process review procedure established by Sec. 615 of the Act. The Level I (local level) hearing and the Level II (state educational agency) hearing were conducted. The Level I Impartial Hearing Officer affirmed the school district's recommended placement of Benjamin and the Level II Review Officer upheld that decision.
 
 
 4
 On November 15, 1986, the Lachmans, as Benjamin's guardians, brought suit on his behalf against the school district, MSTEP and the Illinois State Board of Education. At its core, the complaint alleges that the IEP proposed by the RHIP and the school district, and approved by the Illinois State Board of Education, fails to provide Benjamin with a free appropriate public education as required by Sec. 612(1) of the EAHCA.[3] The complaint requests, inter alia, that the defendant/appellees be ordered to educate Benjamin in a local school (i.e., his neighborhood school) with the services of a cued speech instructor. The complaint also asks that defendant/appellees be enjoined from placing Benjamin in a self-contained classroom (with only other hearing-impaired children) and/or requiring him to learn sign language "as a goal of his education."
 
 
 5
 The district court fashioned its analysis along the lines of the Supreme Court's interpretation, in Board of Education of the Hendrick Hudson Central School District Board of Education, Westchester County v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), of the procedural and substantive requirements imposed by the EAHCA. The critical portion of the district court's substantive analysis is set forth below.
 
 
 6
 The purpose of the Act was to open the door of public education to handicapped children by means of specialized educational services rather than to guarantee any particular substantive level of education once the child was enrolled. The Act does not require a state to maximize the potential of each child commensurate with the opportunity provided nonhandicapped children.
 
 
 7
 In an action such as this a court must first determine whether the responsible agencies have complied with the statutory procedures and then must determine whether the individualized program developed through such procedure is reasonably calculated to enable the child to receive educational benefits. If these requirements are met, the responsible authorities have complied with the obligations imposed by the Act, and the court can require no more.
 
 
 8
 Courts must avoid imposing their view of preferable educational methods upon the responsible authorities. Once it is shown that the Act's requirements have been met, questions of methodology are for resolution by the responsible authorities.
 
 
 9
 Clearly, the consultation and procedural requirements of the Act have been met in this case. Careful, impartial consideration has been given to Benjamin's individual educational needs. A full, free appropriate public education has been offered to him. Plaintiffs, because of their and Benjamin's success with cued speech, assert, with support from their experts, that it is the proper methodology by which Benjamin should be educated. But defendants' experts give equal credence to total communication.
 
 
 10
 Defendants must provide a free appropriate public education for all of the handicapped children in their particular district. They have done so. Plaintiffs are not entitled to have defendants provide a separate educational opportunity for Benjamin.
 
 
 11
 Based on the foregoing analysis, the district dismissed the Lachmans' complaint. They appeal from that dismissal.
 
 II
 
 12
 It is well established that in reviewing the outcomes reached through the Secs. 1415(b) and (c) administrative appeals procedure, a district court is to make an independent decision as to whether the requirements of the Act have been satisfied. That decision is to be based on a preponderance of the evidence, giving due weight to the results of those state administrative proceedings. 20 U.S.C. Sec. 1415(e)(2). See School Board of the County of Prince William, Virginia v. Malone, 762 F.2d 1210, 1218 (4th Cir.1985) (citing Rowley, 458 U.S. at 205, 102 S.Ct. at 3051). See also Doe v. Maher, 793 F.2d 1470, 1492-93 (9th Cir.1986); Bonadonna v. Copperman, 619 F.Supp. 401, 407-08 (D.N.J.1985); Flavin v. Connecticut State Board of Education, 553 F.Supp. 827, 831 (D.Conn.1982). The district court's determination that the IEP proposed for Benjamin by the school district constituted a free appropriate public education as required by the EAHCA is founded on its application of the relevant provisions of the Act to the facts attendant to Benjamin's circumstance. We review the determination of that mixed question of law and fact de novo. See Bryan v. Warden, Indiana State Reformatory, 820 F.2d 217, 220 (7th Cir.1987); United States ex rel. Shaw v. De Robertis, 755 F.2d 1279, 1282 n. 2 (7th Cir.1985); United States ex rel. Scarpelli v. George, 687 F.2d 1012, 1015 (7th Cir.1982). See also Gregory v. Longview School District, 811 F.2d 1307, 1310 (9th Cir.1987) ("whether the school district's proposed IEP was a 'free appropriate public education' as required by the Education for All Handicapped Children Act is a mixed question that we review de novo "); Wilson v. Marana Unified School District No. 6 of Pima County, 735 F.2d 1178, 1181 (9th Cir.1984).
 
 
 13
 The district court correctly ascertained that Rowley, supra, is the definitive Supreme Court pronouncement to date as to the standards a school district must meet in order to satisfy its Sec. 1412(1) obligation to provide all handicapped students with a free appropriate public education. In Rowley, the Court directed the lower courts to engage in the following two-part inquiry in suits, like the present one, brought under Sec. 615(e)(2) of the Act.
 
 
 14
 First, [the court must inquire whether] the State has complied with the procedures set forth in the Act[.] And second, [the court must ask] is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.
 
 
 15
 458 U.S. at 207, 102 S.Ct. at 3051 (footnotes omitted). Appellants do not contend that the appellee education officials failed to comply with the procedures set forth in the Act.[4] Accordingly, we need not address the first part of the Rowley test. In determining whether the IEP proposed by the school district secures to Benjamin the right to a free appropriate free public education guaranteed him by Sec. 612(1) of the Act, our analysis will be limited to the second Rowley inquiry.
 
 III
 
 16
 Examination of the district court opinion reveals that it considered the focal point of the disagreement between the Lachmans and the school district to be a question of whether Benjamin's education can best be facilitated by utilization of the cued speech technique or the total communication concept. The Lachmans dispute that inference by the district court. They perceive that the outcome-determinative question in this case is whether the challenged IEP fails to satisfy the Act's Sec. 612(5) requirement that "to the maximum extent appropriate" Benjamin, as a handicapped child, be "educated with children who are not handicapped," and that he be removed from the regular classroom environment and placed in a special class only to the extent that "the nature or severity of [his] handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. Sec. 1412(5)(B).[5]
 
 
 17
 In Rowley, the Supreme Court was not directly confronted with a claim that the Sec. 1412(5)(B) mainstreaming goal had not been satisfied. In that opinion, the Court made only a passing reference to the "preference" for mainstreaming handicapped children reflected in Sec. 612(5)(B) of the Act. Rowley, 458 U.S. at 202-03, 102 S.Ct. at 3049. Thus, the Lachmans claim that the district court erred because, in applying the Rowley test for satisfaction of the Act's general (Sec. 612(1)) requirement that Benjamin be provided a free appropriate public education, it failed to adequately address the issues raised by the Sec. 1412(5)(B) preference for mainstreaming handicapped children. See Rowley, 458 U.S. at 202-03, 102 S.Ct. at 3049. See also Springdale School District # 50 of Washington County v. Grace, 693 F.2d 41, 43 (8th Cir.1982), cert. denied, 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 298 (1983).
 
 
 18
 The district court opinion is carefully drawn and fully addresses the components of the Rowley test for compliance with the general, overriding requirement of the EAHCA, imposed by Sec. 1412(1), that Benjamin Lachman be provided with a free appropriate public education. However, because it believed the real point of contention between the Lachmans and the school district to be a disagreement as to which of two communication methodologies should be used to facilitate Benjamin's early primary education, the district court engaged in a prototypal Rowley analysis, devoting only one paragraph to the issue of mainstreaming. That paragraph concludes with the observation that under the proposed IEP "Benjamin will be completely mainstreamed in a short period of time."
 
 
 19
 Rowley makes clear that "once a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the State." 458 U.S. at 208, 102 S.Ct. at 3052. The mainstreaming preference articulated in Sec. 1412(5)(B) is one of the "requirements of the Act" referred to in the above excerpt from Rowley. Because the parties' disagreement as to the extent to which Benjamin is to be mainstreamed is inexorably intertwined with their disagreement as to the choice between the cued speech and total communication methodologies, we must first ascertain which of those issues, if any, predominates here.
 
 
 20
 In order to divine the true crux of the dispute that prompted the present cause of action, we must establish the nature of the mainstreaming obligation created by Sec. 1412(5)(B) and clarify the relationship of that statutory language to the general Sec. 1412(1) requirement that handicapped children be provided with a free appropriate public education. Several post-Rowley decisions by the U.S. Courts of Appeals for the Sixth, Eighth and Ninth Circuits, as well as a small number of reported district court opinions, have addressed this topic.
 
 
 21
 In Roncker v. Walter, 700 F.2d 1058 (6th Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983), the Sixth Circuit observed that:
 
 
 22
 The Act does not require mainstreaming in every case but its requirement that mainstreaming be provided to the maximum extent appropriate indicates a very strong congressional preference. The proper inquiry is whether a proposed placement is appropriate under the Act. In some cases, a placement which may be considered better for academic reasons may not be appropriate because of the failure to provide for mainstreaming.
 
 
 23
 Id. at 1063 (footnote omitted). The court in Roncker next identified the question of "whether the services which make the segregated placement superior can be feasibly provided in a non-segregated setting" as the key to determining if a proposed segregated placement is inappropriate under the Act. Id. at 1063. If those services can feasibly be provided in a non-segregated setting, the Roncker court stated it would deem the segregated placement inappropriate under the Act. Also relevant to our analysis is the observation in Roncker that the Act's "strong preference" for mainstreaming must be balanced against "the possibility that some handicapped children simply must be educated in segregated facilities either because ... any marginal benefits from mainstreaming are far outweighed by the benefits gained from services which could not feasibly be provided in the non-segregated setting." Id.[6]
 
 
 24
 The remainder of the relevant reported case law pertaining to Sec. 1412(5)(B) reflects a perception that the mainstreaming preference the statutory provision creates was not meant by Congress to be implemented in an unqualified manner. Instead, it is clear that the courts considering this issue have determined that the Act's mainstreaming preference is to be given effect only when it is clear that the education of the particular handicapped child can be achieved satisfactorily in the type of mainstream environment sought by the challengers to the IEP proposed for that child. See A.W. v. Northwest R-1 School District, 813 F.2d 158, 163 (8th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 144, 98 L.Ed.2d 100 (1987) (holding that Sec. 1412(5) "significantly qualifies the mainstreaming requirement by stating that it should be implemented 'to the maximum extent appropriate,' and that it is inapplicable where education in a mainstream environment 'cannot be achieved satisfactorily.' ") See also Mark v. Grant Wood Area Education Agency, 795 F.2d 52, 54 (8th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1579, 94 L.Ed.2d 769 (1987) (rejecting "the view that the mainstreaming provisions of the Act are satisfied only if a handicapped child is educated in the same classroom with non-handicapped children"); Maher, 793 F.2d at 1483 ("the EAHCA does not compel localities to place handicapped students in regular education classes, but only in the least restrictive setting consistent with their needs and those of other students."); Johnston by Johnston v. Ann Arbor Public Schools, 569 F.Supp. 1502, 1508-09 (E.D.Mich.1983) (finding no violation of the Act's mainstreaming goal where the transfer of a handicapped child from a regular classroom to a special education classroom was necessary and appropriate); Taylor v. Board of Education of Copake-Taconic Hills Central School District, 649 F.Supp. 1253, 1258 (N.D.N.Y.1986) ("in some instances, a special facility will constitute the least restrictive environment for a particular handicapped child").
 
 
 25
 We are convinced that appellants' effort to characterize the sole, true issue in this case as whether the proposed IEP satisfies the Sec. 1412(5)(B) mainstreaming preference is misdirected. Undoubtedly, this case does present a valid question of whether the IEP proposed by the school district and affirmed by the Illinois State Board of Education would result in Benjamin being mainstreamed to the "maximum extent appropriate" as contemplated by Sec. 1412(5)(B). However, on careful examination, it becomes apparent that a determination of whether the IEP proposed for Benjamin provides for mainstreaming to the maximum extent appropriate can be made only within the context of the methodology employed to facilitate his education.
 
 
 26
 The degree to which a challenged IEP satisfies the mainstreaming goal of the EAHCA simply cannot be evaluated in the abstract. Rather, that laudable policy objective must be weighed in tandem with the Act's principal goal of ensuring that the public schools provide handicapped children with a free appropriate education. See Wilson, 735 F.2d at 1183. A major part of the task of local and state officials in fashioning what they believe to be an effective program for the education of a handicapped child is the selection of the methodology or methodologies that will be employed. "The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardians of the child." Rowley, 458 U.S. at 207, 102 S.Ct. at 3051 (emphasis supplied) quoted in Northwest R-1 School District, 813 F.2d at 164.
 
 
 27
 The Lachmans' contention that their son can be fully mainstreamed rests squarely on their belief in, and preference for, the cued speech technique. They do not maintain that the fully-mainstreamed placement they seek would be possible without the use of cued speech and the utilization of a cued speech instructor working at Benjamin's side, full-time, in the classroom. Further, appellants do not claim that Benjamin could be mainstreamed to any greater extent than called for in the proposed IEP, if the total communication methodology is utilized.[7] The reasons relied on by the school district for refusing to place Benjamin in a regular classroom full-time focus on its lack of confidence in the cued speech technique as a means for facilitating immediate, full mainstreaming in Benjamin's case. Instead, the school district believes that the total communication concept is the most appropriate way to facilitate Benjamin's early primary education and it has selected that methodology for his IEP.
 
 
 28
 On the facts of this case, it is clear that the Sec. 1412(5)(B) issue of mainstreaming is subsumed by the parties' disagreement as to methodology. In the absence of the parties' difference of opinion as to that question of educational methodology, there would be no disagreement between them as to the extent of mainstreaming that could presently be achieved for Benjamin. Given the nature of the disagreement between the parties and the concomitant thrust of the Lachmans' cause of action, we can only conclude that the district court did not err when it framed its substantive analysis in a manner closely tracking the Rowley opinion, without expressly addressing the Sec. 1412(5)(B) mainstreaming issue.
 
 IV
 
 29
 We have determined that the core, dispositive issue in the controversy that underlies this cause of action is one centering on a disagreement between appellant parents and appellee school district as to the most appropriate method whereby the education of the parents' handicapped child is to be facilitated. Accordingly, in reviewing the decision of the court below, we, like the district court, must take great care to avoid displacing the educational policy judgments made by appellees. That substantial deference to the decisions of those state and local public education officials is warranted here is confirmed by the statements of the Supreme Court in Rowley as to the role of the courts under the EAHCA in reviewing the decisions made by state and local public education officials.
 
 
 30
 In assuring that the requirements of the Act have been met, courts must be careful to avoid imposing their view of preferable education methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents and guardians of the child.... [I]t seems highly unlikely that that Congress intended courts to overturn a State's choice of appropriate educational theories in a proceeding brought pursuant to Sec. 1415(e)(2).
 
 
 31
 We previously have cautioned that courts lack the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy." We think Congress shared that view when it passed the Act.... Therefore, once a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States.
 
 
 32
 Rowley, 458 U.S. at 207-08, 102 S.Ct. at 3052-53 (citation omitted). See also Hudson v. Wilson, 828 F.2d 1059, 1063 (4th Cir.1987); Northwest R-1 School District, 813 F.2d at 164; Gregory, 811 F.2d at 1311; Rettig v. Kent City School District, 720 F.2d 463, 466 (6th Cir.1984), cert. denied, 467 U.S. 1201, 104 S.Ct. 2379, 81 L.Ed.2d 339 (1984).
 
 
 33
 The district court expressly found that defendant/appellee education officials had complied with the Act. Our review leads us to the same conclusion. Rowley and its progeny leave no doubt that parents, no matter how well-motivated, do not have a right under the EAHCA to compel a school district to provide a specific program or employ a specific methodology in providing for the education of their handicapped child. See Rowley, 458 U.S. at 207, 102 S.Ct. at 3051. See also Wilson, 735 F.2d at 1178, 1182 (the states "have the power to provide handicapped children with an education they consider more appropriate than that proposed by the parents."); Northwest R-1 School District, 813 F.2d at 164; Gregory, 811 F.2d at 1311; Rettig, 720 F.2d at 466; Springdale School District # 50, 693 F.2d at 43. It is clear that the IEP proposed by the school district is based upon an accepted, proven methodology for facilitating the early primary education of profoundly hearing-impaired children. Further, nothing in the record indicates that the proposed IEP does not provide that Benjamin will be educated in a regular classroom environment to the maximum extent appropriate as required by Sec. 612(5)(B) of the Act. Given these findings, we conclude that the proposed IEP will provide Benjamin Lachman with a free appropriate public education as required by Sec. 612(1) of the Act. Accordingly, the judgment of the district court is AFFIRMED.[8]
 
 
 
 [1]
 Appellants' complaint also alleges violations of the Illinois School Code, Ill.Rev.Stat. ch. 122, p 14-8.02 and Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794. Appellants did not advance any substantive argument as to either statute before the district court or in their briefs submitted to this Court. The district court did not address either of these two alternate claims. "Collateral allusions to a legal issue do not require the court to decide difficult questions." Bonds v. Coca Cola Co., 806 F.2d 1324, 1328 (7th Cir.1986), quoted in Anderson v. Gutschenritter, 836 F.2d 346, 349 (7th Cir.1988). "[A]n issue expressly presented for resolution is waived if not developed by argument." Anderson, 836 F.2d at 349 (citing Hunter v. Allis Chalmers, 797 F.2d 1417, 1430 (7th Cir.1986)). Because of appellants' failure to offer any substantive argument or case law citation in support of their assertion that a violation of 29 U.S.C. Sec. 794 has transpired, we can only deem that claim to have been waived. Further, because we have before us no additional argument pertaining to the provision of the Illinois School Code cited by appellants, we cannot engage in a separate analysis of the Lachmans' state law claim
 
 
 [2]
 Cued speech is a technique for aiding hearing-impaired persons to understand spoken language. It is used in conjunction with speech (lip) reading and employs eight hand shapes held in four positions close to the mouth to clarify phonetic ambiguities
 
 
 [3]
 The district court opinion described the final, updated IEP developed by the school district for Benjamin as follows
 [The IEP] proposed that Benjamin be placed at Forest View School in a self-contained total communication hearing impaired program at the primary level. An FM auditory training unit would be provided. Benjamin would be mainstreamed with an interpreter in social studies, science, gym and art. He would receive reading and math in the self-contained classroom at an early second grade level. He would receive interpreter services. He would participate in a pilot project in the areas of speech development and introduction of new vocabulary. Cued speech would also be utilized to assist Benjamin in the transition to signed English. Forest View is an integrated K-5 school with 317 students, thirty-five of whom are hearing-impaired.
 
 
 [4]
 In their initial brief, appellants make reference to the degree of parental involvement permitted them by the school district during the course of the proceedings that resulted in the formulation of Benjamin's IEP. They do not allege that a violation of the Act transpired as a result of the school district's actions in this regard
 
 
 [5]
 Appellants also cite to the regulations of the Office of Special Education and Rehabilitative Services, Department of Education, 34 C.F.R. Secs. 300.550-556, promulgated under the authority of 20 U.S.C. Sec. 1412(5)(B). Those regulations are intended to ensure that the states satisfy the mainstreaming preference articulated by Sec. 1412(5)(B) by providing for the education of handicapped children in the least restrictive environment possible
 
 
 [6]
 Roncker also cites the cost of providing the services necessary to facilitate the education of a handicapped child in a non-segregated environment as a relevant consideration in determining whether, in a particular case, the Act's mainstreaming preference has been satisfied. Roncker on Behalf of Roncker v. Walter, 700 F.2d 1058, 1063 (6th Cir.1983). The school district has not raised cost as a defense here. Therefore, we need not consider that factor in our analysis
 
 
 [7]
 Appellants' contention that the IEP proposed for their son by the school district reflects a philosophical disagreement with the mainstreaming objective of Sec. 1412(5)(B) is not supported by the evidence. The challenged IEP calls for Benjamin to be placed in a regular classroom, fully-mainstreamed environment for approximately half or nearly half of the school day. During the time he is not fully mainstreamed, Benjamin is to be placed in a self-contained classroom within a regular school. The Act's preference for mainstreaming does not require that a school district reject intermediate degrees of mainstreaming when such a placement is otherwise justified by a handicapped child's educational needs. See Wilson v. Marana School District No. 6 of Pima County, 735 F.2d 1178, 1183 (9th Cir.1984). Here, the school district's unwillingness to fully mainstream Benjamin at this time rests squarely on its policy determination that, at the current time, his education can best be facilitated through use of the total communication methodology
 
 
 [8]
 In the district court, appellee MTSEP moved to dismiss appellants' complaint against it for failure to state a claim. MSTEP alleged that the complaint did not establish that it owed a duty to appellants. Therefore it claimed not to be a proper party defendant. The district court denied the motion, holding MSTEP had not met its burden of proving that it was "non-suable." MSTEP appeals that action by the district court. Given our disposition of this case, we need not address this argument by MSTEP