**Michael W. BARNETT, et al., Plaintiffs,**

v.

**The FAIRFAX COUNTY SCHOOL BOARD, et al., Defendants.**

**Civ. A. No. 89–0567–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 7, 1989.

Timothy M. Cook, National Disability Action Center, Washington, D.C., for plaintiffs.

Thomas J. Cawley, John F. Cafferky, Hunton & Williams, Fairfax, Va., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HILTON, District Judge.

### FINDINGS OF FACT

1. Michael Barnett is a sixteen-year-old young man who has suffered from a profound hearing loss in both ears since he was a young child, and is eligible for special education as a "hearing impaired" student. He has been educated in programs offered by the school system for hearing impaired students since he was two years old.

2. The school system began offering "Cued Speech" when Michael was in first grade. Michael has been educated in centralized Cued Speech programs offered by the school system continuously at the elementary, intermediate, and high school level. With the aid of a Cued Speech interpreter and other support services, Michael was increasingly mainstreamed into regular classes. He now takes all his academic classes with nonhandicapped students, with the assistance of a Cued Speech interpreter, and has been selected for the Annandale High School basketball and baseball teams.

3. The Cued Speech method was originally introduced at the request of Michael's parents and the parents of several other hearing impaired students. When the Barnetts and other parents requested that the Cued Speech program be separated from other hearing-impaired programs to avoid any potential for student confusion, the school system separated the programs.

4. For the past two years, Michael has attended Annandale High School in Fairfax County, and is fully mainstreamed with

nonhandicapped students in all his academic classes, through the provisions of the "Cued Speech" interpreters available at that school. He also receives a special resource class one period per day from a full-time staff teacher of the hearing impaired, as well as speech and language therapy several times per week from a therapist who is part of the program.

Plaintiffs concede that the Cued Speech program at Annandale provides Michael with an appropriate and high quality program. Plaintiffs' sole objection to that program is that it is provided only at Annandale, rather than at Michael's base school, West Springfield High School. Annandale is 5.1 miles farther from Michael's home than is West Springfield High School. Annandale's attendance area borders West Springfield's.

5. The Cued Speech program is one of three different educational methodologies which the school system offers for the benefit of more than 300 hearing impaired students that it serves. The other methodologies are the "Total Communication" method, in which communication takes place in signed English, and the "Auditory/Oral" method, which involves communication strictly by the use of lip-reading and use of residual hearing. Fairfax County is one of the very few school districts in the country which offers Cued Speech at all, and one of only five local school districts in the nation (out of approximately 14,000 districts) which offers three different methodologies for teaching hearing impaired students.

6. The location of each individual hearing-impaired student's program varies according to the intensity of the services he requires. Students who utilize the Auditory/Oral approach have less severe hearing impairments, and rely on lip-reading. They do not require the service of an interpreter and many are served in their base schools. Students in the Total Communications and Cued Speech programs have hearing impairments which range from severe to profound. These students require interpreters in order to participate in regular classes.

7. The Cued Speech program is a comprehensive, integrated program which runs from preschool through high school. According to their abilities and needs, many students, aided by Cued Speech interpreters, are mainstreamed into regular academic classes with nonhandicapped students. In addition to interpreter services, students receive speech and language therapy from a trained clinician, and resource assistance from one of two trained teachers of the hearing impaired who are on the full-time staff. The program is overseen by an administrative staff which hires, schedules, and trains interpreters, arranges for coverage of absent interpreters, and monitors and supervises the resource teachers, interpreters, speech therapists and other program personnel.

8. To provide students with the personnel and other services they require, the Cued Speech and Total Communication programs have been established at centrally-located schools which are close to one another, and close to major transportation arteries. The schools also make up a natural feeder network, so that students continue through the grades with their nonhandicapped classmates. The Cued Speech program has been established at Canterbury Woods Elementary School, Poe Intermediate School and Annandale High School, which are within 4.5 miles of one another. The Total Communication program has been established at Mantua Elementary, Frost Intermediate, and Woodson High School. Students in the Fairfax County Total Communication and Cued Speech programs come from across the county, as well as from other counties.

9. There are 22 students, and three full time, five part time, and one substitute interpreters in Cued Speech, and 56 students, and 12 interpreters in Total Communications.

10. The school system has established the Cued Speech program at centralized locations because of the educational advantages involved. Centralization allows the resource teachers, speech and language therapists, and other special education staff to connect, share information, and

support one another on a regular basis, and whenever needed. It allows the regular teaching staff to build experience in serving hearing impaired students. These advantages cannot be duplicated by providing a student with periodic assistance of itinerant teachers or therapists. Centralization also allows the school system to maximize its use of resources, particularly interpreters, for the benefit of all the hearing impaired students. In the Cued Speech program, the eight interpreters must serve 18 students. Having these students in a single series of schools allows one interpreter to cover more than one student at a time. Having the program schools so close together also allows interpreters to travel from one school to the other with a minimum of lost travel time. This also allows interpreters in the same school to substitute for one another, or to substitute at one of the other two program schools, in case of absences. It allows the school system to effectively manage and supervise the resource teachers, therapists, interpreters, and other personnel who serve students. In addition, it allows the school system to effectively plan for the needs of future students.

11. Qualified interpreters are in short supply. During school year 1988–89, for example, and despite efforts to find substitute interpreters, fifteen of Michael's classes alone were forced to go uncovered when interpreters were absent. It would not be possible for the school system to provide qualified interpreters at each neighborhood school for the many students who need them.

12. Michael has, at Annandale, maintained a "B" average. He has participated in extracurricular activities as a member of the Annandale basketball team and baseball team. Michael gets along well with his teachers, coaches, and classmates, and has made many friends at Annandale.

13. Plaintiffs filed a request for a local administrative hearing on September 15, 1987. An administrative hearing was held in December, 1987. A local hearing officer issued a decision on June 16, 1988, requiring the school system to provide Michael

Cued Speech services at West Springfield. This decision was appealed to a state administrative hearing officer. Because a malfunction of the audio tape recorder had made much of the local hearing testimony inaudible, the state hearing officer conducted another hearing in order to hear personally the testimony of most of the original witnesses for both parties.

14. On August 4, 1988, the state hearing officer issued his decision. He ruled that "the Fairfax County Public Schools has proposed an educational program at Annandale that is a free appropriate public education in the least restrictive environment". The state hearing officer ruled that the school system, having offered Cued Speech services at Annandale, was not required to duplicate those services at West Springfield.

## CONCLUSIONS OF LAW

The School Board's obligation to provide special education derives from a statutory basis, Va.Code § 22.1214, and the Education of All Handicapped Children Act, 20 U.S.C. § 1400 *et seq.* (the "Education Act"). The Education Act was intended to provide handicapped children the same "basic floor of opportunity" in primary and secondary education which is enjoyed by nonhandicapped students. *Board of Education v. Rowley,* 458 U.S. 176, 201, 102 S.Ct. 3034, 3048, 73 L.Ed.2d 690 (1982).

A school system's fundamental obligation under the Education Act is to offer a "free appropriate public education." 20 U.S.C. § 1412. In *Rowley* the Supreme Court set out a two-part analysis for determining whether this obligation has been met. First, the court must determine whether the school system has complied with the procedures required by the Act. 458 U.S. at 206–07, 102 S.Ct. at 3050–51. Second, the school system must offer an "appropriate" program, i.e., one which is reasonably calculated to enable the child to receive educational benefits. *Id.* at 207, 102 S.Ct. at 3051.

An "appropriate" program is one which allows the child to make educational progress. *Martin v. School Board,* 3 Va.

App. 197, 210, 348 S.E.2d 857 (1986). Here, Michael has not only progressed from grade to grade, but has maintained a "B" average in rigorous regular classes, and has participated in two interscholastic sports. Michael's record at Annandale demonstrates that he has enjoyed tremendous educational benefit from the Cued Speech program there.

The burden of proof here is on the plaintiffs to prove that the state hearing officer's decision, finding that the school system had offered an appropriate program in the least restrictive environment, was erroneous. *Spielberg v. Henrico County Public Schools*, 853 F.2d 256, 258 n. 2 (4th Cir.1988). A number of factors weigh against such a finding in this matter.

The Education Act 20 U.S.C. § 1412(5)(B), articulates a preference for "mainstreaming" handicapped children in their education. *See, e.g. Lachman v. Illinois State Board of Education*, 852 F.2d 290, 294 (7th Cir.1988). Michael is, and has been, fully and successfully mainstreamed. Annandale is not a "center" attended only by hearing impaired or other handicapped students; it is a regular public high school. Nor is Michael in special classes solely for handicapped students. Everyone of the academic classes in which Michael has been enrolled, is a regular class made up of nonhandicapped students. Michael's program at Annandale allows him to be with the nonhandicapped students for all nonacademic activities including lunch, physical education, and extracurricular activities such as basketball and baseball.

■ The Education Act's "least restrictive environment" provisions do not create an absolute duty. They are, rather, one consideration in the ultimate calculus of whether a program is appropriate. *Martin v. School Board*, 3 Va.App at 201, 348 S.E.2d at 860. *Lachman v. Illinois State Board of Education*, 852 F.2d at 295; *Town of Burlington v. Department of Education*, 736 F.2d 773, 788 (1st Cir.1984). Specifically, 34 C.F.R. § 300.552(a)(3) and § 552(c) do not create any absolute duty to place a child in his base school. These provisions require only that a school system take into account geographical proximity in making placement decisions, and that where more than one appropriate program exists, the school system provide the one closest to the child's home. *Pinkerton v. Moye*, 509 F.Supp. 107, 112–13 (W.D.Va. 1981); 34 C.F.R. § 300.552, Official Comment 2. Here the school system has complied with these regulations, since Michael's individualized education program requires the Cued Speech program, which is available at Annandale, and there is no school nearer than Annandale which provides these Cued Speech services.

■ The obligation to provide in the "least restrictive environment" does not turn upon the strength of a particular student's desire to attend another school.

■ In view of the finite resources available for the education of handicapped children, a school system is not required to duplicate a small, resource-intensive program at each neighborhood school. A school district may establish centralized programs. *Pinkerton v. Moye*, 509 F.Supp. at 112; *Troutman v. School District of Greenville, South Carolina*, EHLR Dec. 554:487, (D.S.C.1983). The Cued Speech program is a specialized one utilized by a small number of students drawn not merely from Fairfax County, but from the entire Northern Virginia area. The program has been established at a network of centrally-located elementary, intermediate, and high schools in order to maximize scarce economic and human resources, particularly qualified interpreters. The school system is not required to duplicate the Cued Speech program for Michael alone merely because there exists a high school which is slightly closer to his house or one he would rather attend.

The plaintiffs contend that Michael has lost self-esteem, is frustrated about attending Annandale High School, and that his verbal IQ has dropped, as have his grades. Michael has testified that his loyalties lie with West Springfield, and he wants to attend school there and be a part of the baseball and basketball teams. While Michael may be frustrated that he cannot choose his high school, there is no evidence of problems with Michael's performance.

A proper reading of his test scores does not indicate any decrease in performance. His grades at Annandale remain good. He remains involved with sports. There is no support in the evidence for the notion that he would receive a better education at West Springfield, nor is there support for the idea that social relationships would be better. Michael has many friends in his neighborhood and at Annandale. He is well liked and gets along well with students and teachers at Annandale. He is well motivated in his team sports.

■ The school system can and must consider the effect of providing a specialized program to one student at his base school upon the rights of other similarly-situated students to demand the same treatment. *Troutman v. School District of Greenville*, EHLR Dec. 554:487, 490 (D.S.C.1983). There are presently at least 78 other hearing impaired students who have or will use interpreters. Were an exception made for Michael, these other students would also expect that they be provided with their own interpreter at their respective base schools. The school system could not provide individual interpreters for each student at his or her base school.

■ While a school system must offer a program which provides educational benefits, the choice of the particular educational methodology employed is left to the school system. *Rowley*, 458 U.S. at 208, 102 S.Ct. at 3051. Indeed, a school district which offers the "total communication" methodology need not also offer the Cued Speech method at all. *See Lachman v. Illinois State Board of Education*, 852 F.2d 290 (7th Cir.1988).

The court should consider the educational reasons why a program is established in a centralized fashion. *Troutman v. School District of Greenville*. EHLR Dec. 554:487, 489–90 (D.S.C.1983). Here, having all interpreters, teachers, therapists, and students together in an ongoing program allows staff interaction, accessibility, and provides much greater cohesiveness.

■ Compliance with Education Act regulations establishes compliance with § 504 of the Rehabilitation Act. Compliance with the Education Act's "least restrictive environment" provisions conclusively establishes compliance with the parallel § 504 regulations. *St. Louis Developmental Disabilities Treatment Center v. Mallory*, 591 F.Supp. 1416, 1464–71 (W.D.Mo.1984) *aff'd*, 767 F.2d 518 (8th Cir.1985); *Darlene L. v. Illinois State Board of Education*, 568 F.Supp. 1340, 1347 (N.D.Ill.1983).

The plaintiff has not been subject to discrimination on the basis of his handicap, since he has not been denied the opportunity to participate in any program. *See Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). He has now, and he has had in the past, a full opportunity to receive an education in courses of his choice, using the methodology of his choice, in classes with nonhandicapped children at a school five miles farther than his base school is from his home. The school system has provided extensive accommodations to allow him to be educated with nonhandicapped students in a neighboring school.

Centralizing the provisions of interpreter services to students at only one of several schools in a system does not violate § 504, *Community College of Denver*, EHLR 257:117 (1979), since it allows one interpreter to serve more than one student at the same time. To assign an interpreter on a one-to-one basis would deprive other handicapped students.

The school system has concentrated its provisions of interpreters, both Cued Speech and Total Communication, at a network of schools in order to allow itself to provide special services effectively to all hearing impaired students who need it. This reasonable judgment does not violate § 504. The Fairfax County Public Schools has provided a free appropriate public education in the least restrictive environment for this plaintiff, and judgment should be entered for the defendants.

An appropriate Order shall issue.