56 F.3d 67
 100 Ed. Law Rep. 910
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Michael RHEINSTROM, by his next friend and father Richard
RHEINSTROM, Plaintiff-Appellant,
v.
LINCOLNWOOD BOARD OF EDUCATION, DISTRICT 74, Defendant-Appellee.
 No. 94-1357.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 26, 1995.*
Decided May 10, 1995.
Rehearing and Suggestion for Rehearing En Banc
Denied June 5, 1995.
 
 Before CUMMINGS, EASTERBROOK and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 This case comes before us as an appeal from a grant of summary judgment and involves parents contesting the proposed placement of their son in a special education program.
 
 
 2
 In 1991, an individual educational program ("IEP") was developed for Michael Rheinstrom recommending his removal from a self-contained classroom for students with special needs related to behavioral and emotional disorders and his placement in a therapeutic day school. Because Michael's parents disagreed with the recommendation, he remained in the self-contained classroom. In 1992, Michael's program was evaluated and school personnel, believing his program was not successful and did not provide sufficiently intensive services to deal with Michael's special needs, developed an IEP recommending Michael's placement in a therapeutic day school. Michael's parents disagreed with this recommendation and in July 1992, a Level I administrative hearing was held. The Level I hearing officer found that Michael's behavior was regressing, that public school placement did not meet Michael's needs and that placement in a therapeutic day school was appropriate. In December 1992, a Level II administrative hearing was held at the request of Michael's parents. The Level II hearing officer found that Michael's behavior had continued to deteriorate in his current placement and that he was becoming increasingly disruptive to staff and other students. The Level II hearing officer concluded that placement in the therapeutic day care center was appropriate.
 
 
 3
 Richard Rheinstrom, as Michael's father and on behalf of his son, sought review of the Level I and Level II administrative decisions pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. Sec. 1415(e), and a monetary damage award pursuant to 42 U.S.C. Sec. 1983 and the Privacy Act of 1974, 5 U.S.C. Sec. 552a(g). The district court held that the findings of the Level I and Level II hearing officers were supported by the record. The district court granted the defendant's motion for summary judgment and affirmed the determination of the Level II hearing officer. Rheinstrom filed a motion to reconsider based upon newly submitted evidence which the district court denied. Rheinstrom appeals.
 
 
 4
 Rheinstrom argues that the district court abused its discretion by denying his motion for reconsideration and failing to consider the additional evidence. The IDEA requires that the district court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. Sec. 1415(e)(2). Under the IDEA, "a party that wants to avail itself of the opportunity to present evidence in the district court [must] make clear its desire to do so." Hunger v. Leininger, 15 F.3d 664, 669 (7th Cir.), cert. denied, 115 S. Ct. 123 (1994). Here, Rheinstrom did not request that the court consider the additional evidence - a Certificate of Achievement and Honor Roll Certificate both dated November 24, 1993 and Michael's grades for the first quarter of the 1993-1994 school year - until the motion to reconsider and did not attempt to present this evidence to the district court prior to the court's decision granting summary judgment on January 11, 1994. We find no abuse of discretion in the denial of a plaintiff's motion to reconsider based upon newly submitted evidence, where the newly submitted evidence was available prior to entry of judgment. See LB Credit Corp. v. Resolution Trust Corp., No. 94-1610, slip op. at 7 (7th Cir. March 10, 1995) (motion to alter or amend judgement is not appropriately used to present evidence that was available prior to the entry of judgment); Lostumbo v. Bethlehem Steel, Inc., 8 F. 3d 569, 570 (7th Cir. 1993) (same).
 
 
 5
 In regard to Rheinstrom's attack of the district court's grant of summary judgment, we have reviewed the record de novo and AFFIRM for the reasons stated in the district court's Memorandum Opinion and Order dated January 11, 1994.
 
 ATTACHMENT
 In the United States District Court
 
 6
 for the Northern District of Illinois
 
 Eastern Division
 
 7
 MR, by his next friend and father, RR, Plaintiff,
 
 
 8
 v.
 
 
 9
 Lincolnwood Board of Education, District 74, Defendant.
 
 No. 93 C 0418
 MEMORANDUM OPINION AND ORDER
 
 10
 HART, District Judge.
 
 
 11
 This case involves review, pursuant to 20 U.S.C. Sec. 1415(e)(2), of a student's proposed placement at a therapeutic day program.[1] Review is pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. Sec. 1401, et seq.
 
 
 12
 A two-part test is used to evaluate a state's compliance with the mandates of the [IDEA]:
 
 
 13
 First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits.
 
 
 14
 [Board of Education v.] Rowley, 458 U.S. [176,] 207 [(1982)]. If the state has satisfied the procedural requirements of the [IDEA] and the program developed by the state is designed to enable the handicapped child to receive educational benefits, the courts can require no more. The purpose of the [IDEA] is to "open the door of public education" to handicapped children, not to educate a handicapped child to his or her highest potential. Id. at 192.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 Because judges are not trained educators, judicial review under the [IDEA] is limited. When reviewing outcomes reached through the administrative appeals procedures established by 20 U.S.C. Secs. 1415(b) and (c), a district court can hear additional evidence and "make an independent decision as to whether the requirements of the act have been satisfied *** based on a preponderance of the evidence." Lachman v. Illinois State Board of Education, 852 F.2d 290, 293 (7th Cir.), cert. denied, 488 U.S. 925 (1988). However, it must give "due weight" to the results of those proceedings, id., bearing in mind not "to substitute [its] own notions of sound educational policy for those of the school authorities which they review." Rowley, 458 U.S. at 206.
 
 
 18
 Board of Education of Community Consolidated School District No. 21 v. Illinois State Board of Education, 938 F.2d 712, 715 (7th Cir. 1991), cert. denied, 112 S. Ct. 957 (1992). The burden of proof is on the party challenging the outcome of the administrative hearings. Id. at 716. The case is before the court on the administrative record.
 
 
 19
 MR is now 13 years old and is in the eighth grade.[2] He is in a self-contained behavior disorder classroom at Golf Junior High School. At age six, MR was diagnosed as having an emotional disorder. MR was placed in the program at Golf under an individualized educational program ("IEP") dated April 17, 1991. From August to November 1991, MR was placed in regular classes or, in educational jargon, "mainstreamed" for some courses. A therapeutic day school was first recommended in 1991. Instead, MR remained in the self-contained classroom at Golf with mainstreaming being limited to gym class. In the views of school personnel, this program was not successful. An IEP dated April 21, 1992 again called for placement in a therapeutic day school. MR's parents opposed that placement and MR has remained at Golf pending resolution of the administrative and court proceedings. The IEP developed by the school officials was upheld at Level I and Level II hearings.
 
 
 20
 The Level II hearing officer found that MR's behavior was deteriorating in his current placement and that he was becoming more disruptive to staff and other students. It was found that MR
 
 
 21
 exhibits bizarre conduct such as barking and acting like a dog including licking his hands like paws; getting up and moving about the classroom at inappropriate times; biting his thumbs and pulling his hair; physically threatening conduct, acting argumentative and being unwilling to follow verbal instructions from teachers; accusing other children of hitting him and trying to hurt him when a student brushed against him in the hallway; laying on the floor in the hall on his side and going around in circles kicking at all of the students that are in the immediate area and then remaining still and unresponsive; deliberately falling on the floor; getting in fights with other students at recess and interrupting other students' recess activities; refusing to use the bathroom for long periods of time and then only unless the bathroom was empty and watched from the outside by staff; being disruptive in an assembly to the extent of having to be removed and then telling his teacher that he was going to kill her; free association; walking around the room imitating a computer; making fun of other students' names; excessive crying; increasing use of verbal threats against teachers and students coupled with getting close to others and raising his fist; tantrums; hitting a teacher and an aide; screaming and swearing over the office intercom system stating that "I'm going to kill all you fuckers;" making faces at other students; leaving his desk and flicking the lights on and off; ...."
 
 
 22
 These findings are supported by the record.
 
 
 23
 The Level II hearing officer found that placement in the therapeutic day school was appropriate in light of MR's deteriorating behavior and the disruptions he was causing. Testimony that MR behaves in Hebrew School was found not to alter testimony about his behavior at Golf. The hearing officer noted that Hebrew School was for a shorter time period.
 
 
 24
 A psychiatrist's January, 1991 recommendation of a self-contained program with mainstreaming was attempted. However, the psychiatrist stated that "any regression in [MR's] behavior in the school setting or a decrease in his educational participation may need to be dealt with by transfer to a therapeutic day school."
 
 
 25
 Plaintiff argues that MR may have been difficult to deal with, but that his program was still successfully educating him. He argues that the "standard is not what is best and easiest for the school district but rather what is in the best interest of the minor child." The Level II officer, however, found that the deterioration in MR's behavior represented a regression on his own part, not just a disruption of others. That finding is supported by the record. Additionally, the effect on other students is a factor that could properly be taken into consideration. See 34 C.F.R. Sec. 300.552, Comment; Doe v. Board of Education of Tullahoma City Schools, ___ F.3d ___, 1993 WL 449230 * 5 (6th Cir. Nov. 5, 1993); Oberti v. Board of Education of Borough of Clementon School District, 995 F.2d 1204, 1217 (3d Cir. 1993); Greer v. Rome City School District, 950 F.2d 688, 697 (11th Cir. 1991), opinion withdrawn, 956 F.2d 1025, opinion reinstated in pertinent part, 974 F.2d 173 (11th Cir. 1992); Daniel R.R.v . State Board of Education, 874 F.2d 1036, 1049 (5th Cir. 1989); Liscio v. Woodland Hills School District, 734 F. Supp. 689, 701 (W.D. Pa. 1989), aff'd by unpublished orders, 902 F.2d 1561, 1563 (3d Cir. 1990).
 
 
 26
 Plaintiff also contends that the Level II hearing was tainted by the use of an allegedly nonconsensual videotape. An example of MR's behavior was videotaped by school officials. The hearing officer only considered the first ten minutes of the videotape, at which point MR objected to being filmed. The hearing officer did not consider the taping that occurred after MR's objection. Even ignoring the videotape entirely, the record is sufficient to support the hearing officer's conclusion. Moreover, videotaping in public areas does not violate any constitutional right of privacy nor constitute an illegal search or seizure. See United States v. Concepcion, 942 F.2d 1170, 1172 (7th Cir. 1991); United States v. Boden, 854 F.2d 983, 990 (7th Cir. 1988); United States v. Taketa, 923 F.2d 665, 677 (9th Cir. 1991). Neither can there be any violation of the federal Privacy Act, 5 U.S.C. Sec. 552a, since defendant, a local school board, is not an agency as that term is used in the Privacy Act. See 5 U.S.C. Secs. 551(1), 552(f), 552a(a)(1); St. Michael's Convalescent Hospital v. State of California, 643 F.2d 1369, 1373 (9th Cir. 1981). Plaintiff also does not present evidence of any violation of the Family Educational Rights and Privacy Act, 20 U.S.C. Sec. 1232g, which permits disclosure of information to other local school officials who have legitimate educational interests, id. Sec. 1232g(b)(1)(A), and to state educational authorities in connection with the enforcement of federal legal requirements, id. Secs. 1232g(b)(1)(C), 1232g(b)(3).
 
 
 27
 The parents prefer a mainstream educational program because they fear that MR will suffer if educated only with other handicapped students. The parents did not present any expert witnesses at either the Level I or Level II hearing.[3] Plaintiff, however, contends that defendant ignored the recommendation of Dr. Giolas that MR's best interests would be served in a self-contained classroom with some mainstreaming. However, as was found by the Level II hearing officer, that recommendation contained the qualification that regression in that setting might require placement in a therapeutic day school.[4] The evidence supports the determination that such regression occurred, justifying a change in MR's IEP.
 
 
 28
 The IDEA contains a preference for mainstreaming handicapped children. 20 U.S.C. Sec. 1412(5)(B); Lachman, 852 F.2d at 294; Oberti, 995 F.2d at 1213-14. The preference for mainstreaming, however, must be balanced against the benefits that can be derived from services that can be provided in a segregated setting. Lachman, 852 F.2d at 295. The IDEA's "mainstreaming preference is to be given effect only when it is clear that the education of the particular handicapped child can be achieved satisfactorily in the type of mainstream environment sought by the challengers to the IEP proposed for that child." Id.
 
 
 29
 Here, defendant made an effort to mainstream MR to the maximum extent possible. See Oberti, 995 F.2d at 1215. That effort proved to be unsuccessful for both MR and the other students in the classroom and school. Defendant then developed a new IEP calling for placement in a therapeutic day school. The Level I and Level II hearing officers found the new IEP to be appropriate. The record shows that MR was given careful and thoughtful attention over a period of years when his conduct was very disruptive to others. The burden is on MR's parents to show that the determination of the administrative hearings is not supported by a preponderance of the evidence. That burden has not been satisfied. Plaintiff points to no additional evidence that could be presented in a hearing. No adequate evidence in the administrative record creates a factual dispute as to the appropriateness of the placement in a therapeutic day school. To the contrary, the evidence, including evaluations by psychologists and social workers, supports the conclusion that MR is not benefitting from interaction with other students at Golf and that he would benefit from being placed in a more structured program with additional support services. The determination of the administrative hearings must be upheld.
 
 
 30
 Plaintiff also asserts a Privacy Act damages claim pursuant to 5 U.S.C. Sec. 552a(g)(5). Plaintiff, however, has no such claim under that provision because defendant is not an agency to which that act applies. See 5 U.S.C. Secs. 551(1), 552(f), 552a(a)(1); St. Michael's Convalescent, 643 F.2d at 1373.
 
 
 31
 IT IS THEREFORE ORDERED that defendant's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff affirming the determination of the Level II hearing officer and dismissing plaintiff's cause of action with prejudice.
 
 Dated: January 11, 1994
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Cir. R. 34(f). Appellant has filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 20 U.S.C. Sec. 1415(e)(2) states:
 (2) Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.
 
 
 [2]
 As of Fall 1992, he was in the seventh grade; it is assumed he has advanced another grade
 
 
 [3]
 Although she apparently changed her position at the Level II hearing held on December 23, 1992, Michael's mother suggested in a letter dated November 18, 1992, that he be placed "in a therapeutic day school setting" as provided for in the IEP. R. 225
 
 
 [4]
 "I would like to point out that any regression in Michael's behavior in the school setting or a decrease in his educational participation may need to be dealt with by transfer to a therapeutic day school. I would consider this a last resort as I believe some exposure to mainstream social behavior would be useful." January 2, 1991 Giolas Psychiatric Evaluation, R. 791