Michael W. BARNETT, by his parents and next friends James E. and Cynthia A. BARNETT, James E. Barnett, Cynthia A. Barnett, Plaintiffs–Appellants,

v.

FAIRFAX COUNTY SCHOOL BOARD, Defendant–Appellee,

The Association for Retarded Citizens of the United States, the Paralyzed Veterans of America, United Cerebral Palsy Associations, Incorporated, National Council on Independent Living, the Disability Rights Education and Defense Fund, Incorporated, Amici Curiae.

---

Michael W. BARNETT, by his parents and next friends James E. and Cynthia A. BARNETT, James E. Barnett, Cynthia A. Barnett, Plaintiffs–Appellants,

v.

FAIRFAX COUNTY SCHOOL BOARD, Defendant–Appellee,

The Association for Retarded Citizens of the United States, the Paralyzed Veterans of America, United Cerebral Palsy Associations, Incorporated, National Council on Independent Living, the Disability Rights Education and Defense Fund, Incorporated, Advocacy, Incorporated, Schools are for Everyone, the Association for Persons with Severe Handicaps, the Virginia Tash, Amici Curiae.

Nos. 89–2454, 89–2467.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 2, 1990.

Decided Jan. 28, 1991.

148

Timothy M. Cook, Nat. Disability Action Center, argued (Beth Pepper, Ira Burnim, Mental Health Law Project, Washington, D.C., on brief), for plaintiffs-appellants.

Thomas Hohn Cawley, argued (John F. Cafferky, Grady K. Carlson, Hunton & Williams, Fairfax, Va., on brief), for defendant-appellee.

Mark S. Partin, Advocacy, Inc., Austin, Tex., for amici curiae Advocacy, Inc., Schools Are for Everyone (SAFE), The Ass'n for Persons With Severe Handicaps (TASH), The Virginia TASH.

Anne D. Smith, White & Case, Washington, D.C., for amici curiae The Ass'n for Retarded Citizens of the U.S., The Paralyzed Veterans of America, United Cerebral Palsy Associations, Inc., Nat. Council of Independent Living, The Disability Rights Educ., and Defense Fund, Inc.

Kathleen Shepard Mehfoud, Mari Maginn Hommel, Hazel, Thomas, Fiske, Weiner, Beckhorn & Hanes, P.C., Richmond, Va., for amicus curiae The Virginia School Boards Ass'n.

Before SPROUSE and CHAPMAN, Circuit Judges, and NICKERSON, United States District Judge for the District of Maryland, sitting by designation.

PER CURIAM:

Michael Barnett and his parents [1] appeal from the district court's order granting the Fairfax County School Board's motions to strike plaintiffs' claims for monetary damages and a jury, 721 F.Supp. 755, and the court's decision that the Board provided Michael with a free appropriate public education in the least restrictive environment at Annandale High School, as required by the Education of the Handicapped Act, as amended, 20 U.S.C. §§ 1400–1461 (1982) ("EHA" or the "Act"), and in accordance with Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") 721 F.Supp. 757. We affirm the district court's ruling that the Board provided Michael with an appropriate education. We need not address the jury or damages issues.

I. BACKGROUND

Michael Barnett is a profoundly hearing-impaired high school student. He is eligible for special education as a "hearing impaired" student and has been educated in programs offered by the Fairfax County school system for hearing-impaired

---

1. The Education of the Handicapped Act gives procedural rights to handicapped children and their parents. *See* 20 U.S.C. § 1415. References to Michael encompass his parents whenever appropriate.

students since he was two years old. Fairfax County offers hearing-impaired students a choice of three hearing-impaired programs, including a "cued speech" program.[2] Fairfax County is one of only five local school systems to offer three different methodologies for educating hearing-impaired students, and one of the very few school districts to offer cued speech.

Since first grade, Michael has received special education utilizing a centralized cued speech program. This program is a comprehensive integrated program which runs from preschool through high school and involves interpreter services, speech and language therapy and resource teacher assistance. The high-school level cued speech program is located at Annandale High School ("Annandale").

Michael has thrived in the cued speech program. With the aid of a cued speech interpreter and other support services, Michael has been increasingly mainstreamed into regular classes. During Michael's freshman and sophomore years, Michael attended Annandale, and with the assistance of cued speech interpreters, he was fully mainstreamed with nonhandicapped students in all of his academic classes. Michael also received daily support from a certified teacher of the hearing impaired, as well as speech and language therapy several times per week. Michael excelled at Annandale academically, and he participated in extracurricular activities as a member of the Annandale baseball and basketball teams.

Michael and his parents concede that the cued speech program at Annandale provides Michael with an appropriate and high quality program. Plaintiffs, however, object to the location of the cued speech program at Annandale rather than at Michael's base school, West Springfield High School ("West Springfield"). Since 1987, plaintiffs have requested that the Fairfax County School Board establish the cued speech program at Michael's base school. Because Annandale is approximately five miles farther from Michael's home than his base school, Michael's placement at Annandale required additional travel time.[3]

The Board denied Michael's initial request to duplicate the program at West Springfield. Michael and his parents appealed this decision through the administrative process provided by the EHA. An administrative hearing was held in December 1987 and a local hearing officer issued a decision on June 16, 1988, requiring the Board to provide Michael with cued speech services at West Springfield. The Board appealed this decision to a state administrative hearing officer. After conducting another hearing, the state hearing officer ruled that the Board was not required to duplicate at West Springfield the cued speech services offered at Annandale.

Michael and his parents then filed this action in the district court seeking an injunction requiring the Board to provide cued speech services for Michael at West Springfield and requesting compensatory damages in excess of $100,000. Before trial, the court granted the Board's motions to strike the plaintiffs' claims for monetary damages and a jury. After a bench trial, the court entered judgment in favor of the Board upholding the state hearing officer's decision that the Board's policy of providing high school cued speech services only at Annandale was appropriate and that Michael should attend school there. The court found that, in light of the scarcity of highly-trained personnel and resources, the small number of students utilizing the cued speech program, and the educational advantages of centralizing the program at Annandale, the Board had fulfilled the

---

**2.** The cued speech method was originally introduced at the request of Michael's parents and the parents of several other hearing-impaired students.

**3.** The parties dispute the amount of additional travel time involved. Plaintiffs contend that Michael traveled 11½ hours per week to attend Annandale. Defendants, on the other hand, claim that Michael traveled approximately 3½ hours more per week to Annandale than he would if he were placed at West Springfield.

EHA requirements by providing Michael with a cued speech program at Annandale. The court also ruled that the Board did not discriminate against Michael by placing him at Annandale. The court then entered judgment in favor of the Board and dismissed the complaint.

On September 5, 1989, plaintiffs withdrew Michael from the cued speech program at Annandale. Michael currently attends West Springfield where he receives private interpreter services.

On appeal, plaintiffs argue that the district court erroneously held that the Board provided Michael with a free appropriate educational program at Annandale and that the Board was not required to duplicate this program for Michael at West Springfield. After a careful review of the record, we find that the Board fully complied with the EHA's procedural requirements and we affirm the district court's decision that the Board offered Michael an appropriate program at Annandale. We also find that neither the EHA nor Section 504 required the Board to duplicate the cued speech program for Michael alone at his community school. We first address plaintiffs' arguments under the EHA and then we turn to Section 504.

## II. THE EHA

### A. Statutory Background

The EHA requires that all states receiving federal assistance ensure that each disabled student in the state receive a "free appropriate public education." 20 U.S.C. § 1412(1) (1982). In pertinent part, the Act defines a free appropriate public education as:

> special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge, ... [and] (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

Id. at § 1401(18). The educational program offered by the state must be tailored to the unique needs of the handicapped child by means of an "individualized education program" ("IEP"). Id. at § 1414(a)(5). The IEP sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives. Id. at § 1401(19). The IEP is prepared at a meeting between a representative of the local school district, the child's teacher, the parents or guardians, and whenever appropriate, the disabled child. The IEP must be reviewed and, where necessary, revised at least once a year in order to ensure that local agencies tailor the statutorily required "free appropriate public education to each child's unique needs." Id. at § 1414(a)(5).

Although the state must place a child in "the least restrictive environment," 34 C.F.R. § 300.552(d), the Act and regulations do not establish specific guidelines defining the IEP's substantive content. The Act, however, requires that handicapped children be educated in regular classrooms with nonhandicapped children to the greatest extent possible. 20 U.S.C. § 1412(5)(B). Educating a handicapped child in regular classrooms with nonhandicapped children is known as "mainstreaming."

The EHA also imposes extensive procedural due process requirements upon the participating states. Complaints brought by parents or guardians must be resolved at "an impartial due process hearing." Id. at § 1415(b)(2). Any party dissatisfied with the state administrative hearing officer's decision may bring a civil action in state or federal court. Id. at § 1415(e)(2). In such an action, the district court must conduct an independent review based on the preponderance of the evidence. In doing so, however, the court must give "due weight ... to [the state administrative] proceedings." Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982).

A party's complaint under the EHA is subject to a two-step inquiry to determine: (1) whether the school system has complied with the Act's procedural requirements; and (2) whether the school system has offered an "appropriate" program, *i.e.*, one which is "reasonably calculated to enable the child to receive educational benefits." *Id.* at 206–07, 102 S.Ct. at 3051.

Our first inquiry is whether the Board complied with the EHA's procedural requirements in refusing to duplicate the cued speech program for Michael at his base school. We then turn to the question of whether the district court correctly found that the program offered at Annandale was "appropriate."

### B. *Procedural Compliance*

Plaintiffs contend that the Board's unspoken "policy" of categorically placing at Annandale all high school handicapped students using the cued speech method violates the EHA's requirement that each student's IEP address the individual needs of that student. In essence, plaintiffs challenge the Board's authority under the EHA to centralize the high school level cued speech program at Annandale. The Board rejects this argument, as did the district court and the state administrative hearing officer, and argues that the use of a small, resource intensive, centralized program for handicapped children in Michael's situation does not violate the EHA's procedural requirements. The Board points to the educational, financial and resource advantages of centralizing this type of program. The Board further contends that it has provided Michael with a high quality program at Annandale that allows him to be mainstreamed as close as reasonably possible to his home.

The district court agreed with the Board and found that in light of the scarcity of highly-trained personnel and resources, the small number of students utilizing the cued speech program, and the educational advantages of centralizing the program at Annandale, the Board had fulfilled the EHA requirements by providing Michael with a cued speech program there. In making this finding, the court stated:

The Cued Speech program is a specialized one utilized by a small number of students drawn not merely from Fairfax County, but from the entire Northern Virginia area. The program has been established at a network of centrally-located elementary, intermediate, and high schools in order to maximize scarce economic and human resources, particularly qualified interpreters. The school system is not required to duplicate the Cued Speech program for Michael alone merely because there exists a high school which is slightly closer to his house or one he would rather attend....

The school system can and must consider the effect of providing a specialized program to one student at his base school upon the rights of other similarly-situated students to demand the same treatment. There are presently at least 78 other hearing impaired students who have or will use interpreters. Were an exception made for Michael, these other students would also expect that they be provided with their own interpreter at their respective base schools. The school system could not provide individual interpreters for each student at his or her base school.

While a school system must offer a program which provides educational benefits, the choice of the particular educational methodology employed is left to the school system. *Rowley*, 458 U.S. at 208. Indeed, a school district which offers the "total communication" methodology need not also offer the Cued Speech method at all.

The court should consider the educational reasons why a program is established in centralized fashion. Here, having all interpreters, teachers, therapists, and students together in an ongoing program allows staff interaction, accessibility, and provides much greater cohesiveness.

(Citations omitted.)

At the outset, we note that Congress made two deliberate legislative decisions in

enacting the EHA. First, Congress chose to leave the section of educational policy and methods where they traditionally have resided—with state and local school officials. *Hendrick Hudson Dist. Bd. of Educ. v. Rowley,* 458 U.S. at 207–08, 102 S.Ct. at 3051–52. In addition, Congress's goal was to bring handicapped children into the public school system and to provide them with an education tailored to meet their particular needs.

▪ We believe that a congressional mandate that dictates the substance of educational programs, policies and methods would deprive school officials of the flexibility so important to their tasks. Ultimately, the Act mandates an education for each handicapped child that is responsive to his or her needs, but leaves the substance and the details of that education to state and local school officials.

▪ Applying these principles to the facts of this case we affirm the district court's decision. We do not agree with plaintiffs that the Board failed to consider Michael's individual needs in placing him at Annandale, and we also reject plaintiffs' suggestion that the EHA requires the Board to duplicate at Michael's base school a highly specialized education program because Michael's base school is a few miles closer to his home. Adopting plaintiffs' position would require us to intrude upon the educational policy choices that Congress deliberately left to state and local school officials. Whether a particular service or method can feasibly be provided in a specific special education setting is an administrative determination that state and local school officials are far better qualified and situated than are we to make. Moreover, we believe that when devising an appropriate program for individual students, a school system may consider the feasibility of such a program. *Roncker v. Walter,* 700 F.2d 1058, 1063 (6th Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983); *Department of Educ. of Hawaii v. Katherine D.,* 727 F.2d 809, 813 (9th Cir.1983), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 260 (1985); *Gillete v. Fairland Bd. of Educ.,* 725

F.Supp. 343, 346 (S.D.Ohio 1989), *appeal dismissed,* 895 F.2d 1413 (6th Cir.1990). Accordingly, we affirm the district court's decision on this point.

### C. *Appropriateness of Program at Annandale*

Plaintiffs also challenge the appropriateness of the cued speech program at Annandale. First, plaintiffs argue that the district court improperly placed on them the burden of proof in showing that the state administrative hearing officer was erroneous in finding that the program at Annandale was appropriate. Next, they contend that the Board's failure to establish cued speech services for Michael at West Springfield violates the EHA's requirement that the Board provide Michael with a "free appropriate public education." The Board, however, claims that the program at Annandale is appropriate for Michael. The Board also argues that the EHA does not require it to set up the cued speech program for Michael alone at his base school.

▪ We reject plaintiffs' argument that the district court incorrectly placed on them the burden of proof. In a previous case, we noted in a footnote that in an EHA action seeking to overturn a decision by a state hearing officer, the party challenging the hearing officer's decision properly bears the burden of proof in showing that the officer's decision was erroneous. *Spielberg v. Henrico County Public Schools,* 853 F.2d 256, n. 2 (4th Cir.1988), *cert. denied,* 489 U.S. 1016, 109 S.Ct. 1131, 103 L.Ed.2d 192 (1989). We see no reason to depart from our prior finding, and thus we hold that the burden is properly allocated to the party challenging the administrative decision below. Because plaintiffs challenged the state hearing officer's decision in the district court, the court properly placed on them the burden of proof.

Regarding plaintiffs' argument that the program offered at Annandale was inappropriate, we note that in *Rowley* the Supreme Court defined an appropriate program as consisting of "educational instruction specially designed to meet the unique needs of the handicapped child, supported

by such services as are necessary to permit the child 'to benefit' from the instruction." *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. at 188–89, 102 S.Ct. at 3042. In essence, an appropriate education is one which allows the child to make educational progress. *Martin v. School Board*, 3 Va.App. 197, 210, 348 S.E.2d 857 (1986).

■ Based on our careful review of the record, we conclude that the district court correctly held that the program at Annandale was an appropriate education given the terms of the Act. As the court noted, Michael's scholastic record at Annandale and his participation in interscholastic sports demonstrated that he had received "tremendous educational benefit from the cued speech program" at Annandale. Significantly, plaintiffs have also conceded that "Michael's program at Annandale is of high quality, and that he is receiving an appropriate education there."

The program at Annandale also satisfies the EHA's preference for "mainstreaming" handicapped children in their educational placement. *See* 20 U.S.C. § 1412(5)(B). In *DeVries v. Fairfax County School Bd.*, 882 F.2d 876, 878 (4th Cir.1989), we recognized the importance of mainstreaming, noting that "[m]ainstreaming of handicapped children into regular school programs where they might have opportunities to study and to socialize with nonhandicapped children is not only a laudable goal but is also a requirement of the Act."

In this case, the evidence clearly demonstrates that the Board complied with the Act's mainstreaming requirements by placing Michael at Annandale. Annandale is not a "center" attended only by hearing-impaired or other handicapped students; it is a regular public high school. Michael was enrolled in regular classes comprised of nonhandicapped students, and his cued speech program integrated him with nonhandicapped students for all nonacademic activities.

Despite their concession and the clear record below, plaintiffs, nonetheless, contend that the Board had a duty under the EHA to duplicate interpreter services provided at Annandale at Michael's community school. Plaintiffs argue that the EHA requires the defendant to place Michael as close as possible to his home. They also suggest that unless Michael's IEP requires some other arrangement, he should be permitted to attend the school he would attend if he were not disabled, *i.e.*, West Springfield.

■ As already noted, a placement is to be made in the "least restrictive environment" given the child's unique educational needs and the placement's "potential harmful effect." 34 C.F.R. § 300.522. To support their argument, plaintiffs rely on two regulations promulgated under the Act. These regulations provide that a placement be made "as close as possible to the child's home" and unless the "child's [IEP] requires some other arrangement," that the placement be made "in the school [the child] would attend if not handicapped." *Id.* at § 300.552(a)(3), (c). The official comment to these regulatory directives provides in relevant part as follows:

> [A]mong the factors to be considered in placing a child is a need to place the child as close to home as possible. Recipients are required to take this fact into account in making placement decisions. The parents' right to challenge the placement of their child extends not only to the placement in special classes or separate schools, but also to placement in a distant school, particularly in a residential program.

In light of these comments, we do not interpret this section as imposing upon a school board an absolute obligation to place a child in his base school. Rather, this section requires only that a school board take into account, as one factor, the geographical proximity of the placement in making these decisions. *See Pinkerton v. Moye*, 509 F.Supp. 107, 112 (W.D.Va.1981) (adopting similar interpretation).

Here, the Board fully complied with this section by placing Michael at Annandale. Michael's IEP requires the cued speech program, which is available at Annandale, and there is no school nearer than Annandale which provides these services.

Plaintiffs also argue that the district court erroneously allowed the Board, in

making placement decision, to consider the lack of financial resources and the impact on the other students of providing one student an interpreter. The district court found that in light of the finite resources available for the education of handicapped children, a school system is not required to duplicate a small, resource-intensive program at each neighborhood school.

■ Although we agree with plaintiffs that the Board should not make placement decisions on the basis of financial considerations alone, "appropriate" does not mean the best possible education that a school could provide if given access to unlimited funds. *See Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. at 199, 102 S.Ct. at 3047 ("to require ... the furnishing of every special service necessary to maximize each handicapped child's potential is ... further than Congress intended to go"); *Department of Educ. of Hawaii v. Katherine D.*, 727 F.2d at 813 (EHA does not require that states provide the best possible education for handicapped children). Because the Act requires the state to establish "priorities for providing a free appropriate public education to all handicapped children," we find that Congress intended the states to balance the competing interests of economic necessity, on the one hand, and the special needs of a handicapped child, on the other, when making education placement decisions. 20 U.S.C. § 1412(3); *Doe v. Anrig*, 692 F.2d 800, 806 (1st Cir.1982) (in determining appropriate placement of an individual handicapped child, the child's needs must be weighed against the realities of limited public monies); *Pinkerton v. Moye*, 509 F.Supp. at 112 ("competing interests must be balanced to reach a reasonable accommodation"). Consequently, in reviewing the defendant's placement decision, the district court correctly considered these factors and properly found that the program offered at Annandale was appropriate.

## III. SECTION 504

■ Plaintiffs argue that the district court erroneously found that the Board did not violate Section 504 of the Rehabilitation Act for two reasons. First, plaintiffs contend that by excluding Michael from attending his neighborhood school the Board violated Section 504. The Board argues that it did not discriminate against Michael because he has not been denied the opportunity to participate in any program.

Section 504 provides in relevant part:

No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C.A. § 794(a) (West Supp.1990).

In failing to find a Section 504 violation, the district court relied on *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). Interpreting Section 504, the *Davis* Court held that a nursing college did not discriminate against a hearing-impaired applicant by failing to provide her with a nursing instructor, or by excusing her from courses that presented difficulties because of her hearing impairment. The Court unanimously held that no such "affirmative action" was required by the "language, purpose, [or] history of § 504." *Id.* at 411, 99 S.Ct. at 2369.

Unlike the nursing student in *Davis*, in this case Michael had the opportunity to participate fully in the public educational program offered by the Board. Considering that the college's failure to provide a nursing instructor to the handicapped student in *Davis* did not violate Section 504, we are constrained to conclude that plaintiffs have not made out a claim of unlawful discrimination under Section 504.[4]

■ Plaintiffs' second contention posits that centralizing the cued speech services for high school level handicapped students violates Section 504. The district court specifically rejected this argument and so do we. We believe, as did the district

---

**4.** Plaintiffs rely on three cases to support their argument that Michael has been denied access to any educational program. We find the cases inapposite. In these cases, the federal recipient

court, that the Board's decision to centralize the cued speech service at Annandale was reasonably based.

Moreover, the Supreme Court stated in *Davis*:

Section 504 by its terms does not compel educational institutions ... to make substantial modifications in their programs to allow disabled persons to participate. Instead, it requires only that an "otherwise qualified handicapped individual" not be excluded from participation in a federally funded program "solely by reasons of his handicap," indicating only that mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context.

*Southeastern Community College v. Davis*, 442 U.S. at 405, 99 S.Ct. at 2366. Requiring the Board to provide every hearing-impaired student with his interpreter of choice at his base school, instead of at mainstreamed but centralized locations, in our view would constitute a "substantial modification" of the Board's educational programs. Accordingly, we affirm the district court's ruling on this point.

### IV.  CONCLUSION

In sum, we see no error in the district court's finding that the Fairfax County School Board provided Michael with an appropriate public education at Annandale and that the Board was not required to duplicate this program at Michael's community school under either the EHA or Section 504. Therefore, we need not address plaintiffs' arguments regarding damages and the right to a jury trial. We see no merit in plaintiffs' remaining arguments.

Accordingly, the judgment of the district court is

AFFIRMED.

---

either refused to provide any interpreter service to the handicapped student or denied the child access to a regular public classroom situation. *See Rothschild v. Grottenthaler*, 907 F.2d 286, 293 (2d Cir.1990); *Barnes v. Converse College*,

---

436 F.Supp. 635, 636–37 (D.S.C.1977); *Hariston v. Drosick*, 423 F.Supp. 180, 184 (S.D.W.Va. 1976). In the present case, however, the Board provided Michael with the cued speech program at Annandale.