938 F.2d 712
 68 Ed. Law Rep. 987
 BOARD OF EDUCATION OF COMMUNITY CONSOLIDATED SCHOOL DISTRICT
NO. 21, COOK COUNTY, ILLINOIS, Plaintiff-Appellant,
v.
ILLINOIS STATE BOARD OF EDUCATION, Douglas C. Cannon and
Sheldon and Pauline Brozer on Behalf of Adam
Brozer, Defendants-Appellees.
 No. 90-3599.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 28, 1991.
Decided July 23, 1991.
Rehearing Denied Aug. 21, 1991.
 
 Marian C. Haney, Eugene G. Bruno, Fay Hartog-Rapp, Joan E. Gale, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for plaintiff-appellant.
 Mary Ellen Coghlan, Asst. Atty. Gen., Office of the Atty. Gen., Michael D. Gerstein, Chicago, Ill., for defendants-appellees.
 Before CUMMINGS, WOOD, Jr. and FLAUM, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 Adam Brozer is a fifteen-year-old junior high school student who is handicapped primarily by a behavior disorder and also by a learning disability. In this appeal, brought pursuant to the Education of the Handicapped Act, 20 U.S.C. Sec. 1400 et seq. ("EHA"),[1] the sole issue is whether the district court erred in affirming an order of the Illinois State Board of Education directing that Adam be placed in a private day school near his family's residence in Wheeling, Illinois.
 
 BACKGROUND
 
 2
 Adam was first identified as behavior disordered in May 1986. His school district, here the plaintiff, recommended that Adam be placed in the Student Support Center ("SSC") of the Kilmer School, a public school in Buffalo Grove, Illinois. Adam's parents acquiesced in the recommendation after initially resisting, and Adam was placed in an educational program run through the SSC at Kilmer.
 
 
 3
 From February 1987 through the end of the 1988-1989 school year, Adam progressed moderately, receiving grades in the "B" to "C" range. Adam's classroom teacher provided extensive services for his behavior disorder in the 1988-1989 school year, but his behavior deteriorated. He was at times disruptive and violent. The district became concerned that adequate support services would not be available to Adam the following year at Holmes Junior High School in Wheeling. After holding a multi-disciplinary staff conference in February 1989 to discuss appropriate placements, the district recommended that Adam be placed at the Behavior Education Center at Jack London School, also in Wheeling ("BEC/Jack London"). BEC/Jack London is an alternative public school for students who suffer mainly from severe behavioral disorders.
 
 
 4
 In May 1989 another multi-disciplinary staff conference was held to formulate the "individualized educational program" or IEP, required under the EHA. See 20 U.S.C. Sec. 1401(a)(18). Again the district recommended the BEC/Jack London placement. The Brozers objected, preferring that Adam be placed at the Student Support Center at Holmes Junior High. The district deferred, and Adam started junior high school at Holmes in the fall of 1989.
 
 
 5
 At Holmes, Adam's behavior worsened rapidly. One of his teachers described him as "out of control," and he was failing all of his first semester classes. Because the Brozers withdrew their consent for Adam to be disciplined in school or to receive social services, Adam's teachers could not as easily intervene to teach Adam to behave responsibly.
 
 
 6
 On November 11, 1989, at a third multi-disciplinary staff conference, the MDC team concluded that Adam's placement at Holmes was failing to meet his educational needs. The district again recommended a more restrictive placement for Adam at BEC/Jack London. When Adam's parents refused to consent to this placement, the district initiated the informal due process review procedure established by 20 U.S.C. Sec. 1415(b)(1)(E) to determine the appropriate placement for Adam.
 
 
 7
 The Level I (local review) hearing was held on February 23 and 28, 1990. Adam's parents opposed the BEC/Jack London placement on the grounds that because Adam was not mainly behavior disordered, the BEC/Jack London facility did not suit his needs. The Level I hearing officer agreed with the district that Adam was primarily behavior disordered and only secondarily learning disabled. The hearing officer also noted the "irreconcilable differences" that had developed between the Brozers and the district. She listed actions taken by the Brozers which impeded the district's efforts to aid Adam's education. Among these were: 1) the parents' refusal of support services for Adam; 2) the parents' refusal to supply Adam's medical history to his school; 3) the parents' refusal to allow detention or quiet lunches to be used as intervention strategies for Adam; 4) the fact that the parents had made derogatory comments about school staff members in Adam's presence, with the effect of undermining the school's educational programs. In light of these problems, the Level I hearing officer found that Adam's education could only "be effectuated if the parents are not involved on a continuous basis in second guessing * * * the disciplinary efforts of the educators." To this end she ordered that Adam be enrolled, not at BEC/Jack London, but at public expense at a private residential school, the Arden Shore Residential Educational Facility in Lake Bluff, Illinois. The hearing officer ordered that Adam be placed at BEC/Jack London until Arden Shore could accommodate him.
 
 
 8
 The Brozers appealed the Level I decision and order, requesting at the Level II (the state educational agency) hearing that Adam be placed either at Holmes or at a private day placement closer to home than Arden Shore. The Level II officer, like the Level I officer, noted the extremely adversarial relationship between the Brozers and the district, likening the Brozers' mindset to a "siege mentality." He agreed that "the state of mind of the parents [was] likely to affect the success or failure of the District's proposed placement at Jack London School." In fact, he stated that because the district's proposed placement had been "poisoned" in Adam's mind by his parents, there was "no reason to expect that the [BEC/Jack London] placement will be successful." The Level II officer thus concurred in the district's judgment that Adam needed a more restrictive placement than Holmes. However, he felt the Level I officer had not upheld her obligation to order the least restrictive placement that would still meet Adam's needs. See 20 U.S.C. Sec. 1412(5). Specifically he did not feel that the evidence supported the Level I officer's finding that Adam needed to be enrolled at a private residential school. He ordered the school district to find Adam a placement at a private day school within 30 minutes commuting distance from the Brozers' residence or within 10 miles from the edge of Adam's school district.
 
 
 9
 The school district appealed to federal district court pursuant to 20 U.S.C. Sec. 1415(e)(2). It contended that the Level II hearing officer erred in considering the Brozers' hostility to the BEC/Jack London placement as a part of his analysis of whether BEC/Jack London was an appropriate placement under the EHA. It requested an order placing Adam at BEC/Jack London. The district court entered summary judgment affirming the Level II hearing officer's order, and the school district appealed to this Court.[2]
 
 ANALYSIS
 
 10
 The Education for the Handicapped Act provides federal funds to assist states in educating handicapped children. To receive funds, a state must provide each handicapped child with a "free appropriate public education" tailored to his or her needs by an "individualized educational program."[3] The Supreme Court has defined a "free appropriate public education" as one which guarantees a reasonable probability of educational benefits with sufficient supportive services at public expense. See Board of Education v. Rowley, 458 U.S. 176, 188-189, 102 S.Ct. 3034, 3042, 73 L.Ed.2d 690 (1982). A two-part test is used to evaluate a state's compliance with the mandates of the EHA:
 
 
 11
 First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?
 
 
 12
 Rowley, 458 U.S. at 207, 102 S.Ct. at 3051. If the state has satisfied the procedural requirements of the EHA and the program developed by the state is designed to enable the handicapped child to receive educational benefits, the courts can require no more. The purpose of the EHA is to "open the door of public education" to handicapped children, not to educate a handicapped child to his or her highest potential. Id. at 192, 102 S.Ct. at 3043.
 
 
 13
 The issue on appeal is narrowly focused on the second of the two questions posed in the Supreme Court's test. The parties now agree on the proper characterization of Adam's handicaps. The state has complied with the procedures set forth in the EHA. The question is simply whether the BEC/Jack London placement recommended by Adam's school district was inappropriate for Adam and whether the private day placement ordered by the Level II hearing officer is indeed reasonably calculated to be of educational benefit to Adam.
 
 
 14
 Because judges are not trained educators, judicial review under the EHA is limited. When reviewing outcomes reached through the administrative appeals procedures established by 20 U.S.C. Secs. 1415(b) and (c), a district court can hear additional evidence and "make an independent decision as to whether the requirements of the act have been satisfied * * * based on a preponderance of the evidence." Lachman v. Illinois State Bd. of Educ., 852 F.2d 290, 293 (7th Cir.1988), certiorari denied, 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327. However, it must give "due weight" to the results of those proceedings, id., bearing in mind not "to substitute [its] own notions of sound educational policy for those of the school authorities which they review." Rowley, 458 U.S. at 206, 102 S.Ct. at 3051. At the Court of Appeals level, we view the question of whether an IEP is adequate and appropriate as a mixed question of law and fact, and thus review the district court's ultimate determination de novo. But in the absence of a mistake of law, the district court's answer to this mixed fact/law question is only reviewable for clear error. See Roland M. v. Concord School Comm., 910 F.2d 983, 990-991 (1st Cir.1990), certiorari denied, --- U.S. ----, 111 S.Ct. 1122, 113 L.Ed.2d 230; Wexler v. Westfield Bd. of Educ., 784 F.2d 176, 181 (3rd Cir.1986), certiorari denied, 479 U.S. 825, 107 S.Ct. 99, 93 L.Ed.2d 49. In this appeal, the school district bears the burden of proof as the party challenging the outcome of the state administrative hearings. See Karl v. Board of Education, 736 F.2d 873, 877 (2d Cir.1984); Thomas v. Cincinnati Bd. of Educ., 918 F.2d 618, 624 (6th Cir.1990).
 
 
 15
 The district court applied the correct legal standard in affirming the decision of the Level II hearing officer ordering Adam to be placed in a private day school rather than at BEC/Jack London. A school district has met the substantive requirements of the EHA if its proposed placement is reasonably calculated to be of educational benefit to the handicapped child. The district judge properly kept this question foremost in his mind, as had the hearing officers before him. He ultimately concurred in the opinions of the Level I and Level II hearing officers that Adam "would not be able to satisfactorily obtain the required education benefits from the District's proposed placement in light of the history of Adam's and his parents' relationship with the District." Bd. of Educ. of Community Consolidated School Dist. 21 v. Ill. State Bd. of Educ., No. 90 C 3087, 1990 WL 165606 (N.D.Ill. Oct. 22, 1990) (memorandum opinion and order) (emphasis supplied). After finding that the BEC/Jack London placement would not be of sufficient educational benefit to Adam to meet the requirements of the EHA, the court considered the remaining options: private day placement and private residential placement. The court found explicitly that "placement in a private day-school facility is necessary at this time in order for Adam to obtain the educational benefit mandated by the [EHA]." Id. The court chose the day school option because it was the "least restrictive placement" from which Adam could receive educational benefit. See 20 U.S.C. Sec. 1412(5) (expressing preference that "to the maximum extent appropriate," handicapped children not be removed from regular educational environment).
 
 
 16
 The school district argues that it was improper as a matter of law for the district court to consider the Brozers' hostility to the BEC/Jack London placement in analyzing the educational benefits which could be expected to flow from that placement. This contention is incorrect. The sole legal requirement is that the IEP be designed to serve the educational interests of the child. The EHA does not limit the factors that can be considered in judging the likely impact of the IEP on the child so long as they bear on the question of expected educational benefits. In this case the district court made a factual finding that the parents' attitudes were severe enough to doom any attempt to educate Adam at BEC/Jack London. This finding had obvious and direct relevance to any assessment of the probable benefit to Adam of the BEC/Jack London placement. The court only considered the Brozers' attitude to the extent that it related to the ultimate question of whether the court could deem the BEC/Jack London placement to be "reasonably calculated" to supply educational benefit to Adam. The district court's factual findings were not clearly erroneous and it applied the proper legal standard to those facts.
 
 
 17
 The school district believes that our previous holding in Lachman, 852 F.2d at 290, precluded the district court from considering the Brozers' hostility to the school district's proposal. In Lachman we wrote that parents:
 
 
 18
 do not have a right under the [EHA] to compel a school district to provide a specific program or employ a specific methodology in providing for the education of their handicapped child.
 
 
 19
 Lachman, 852 F.2d at 297, citing Rowley, 458 U.S. at 207, 102 S.Ct. at 3051. The district contends that because Lachman found parental preference to be an invalid criterion by which to judge an IEP, we cannot allow any consideration of the Brozers' opposition to the BEC/Jack London placement in determining whether it passes muster under the EHA.
 
 
 20
 Lachman does not prevent any consideration of parental hostility. Lachman holds that a state-proposed IEP which meets the substantive requirements of the EHA cannot be defeated merely because the parents believe a better educational program exists for their child. Lachman involved a dispute between parents and a school district over how best to educate a deaf child. The parents favored a "cued speech" methodology aimed at training the child to understand spoken language. The district recommended a "total communication" approach in which the child would have relied primarily on sign language. The district court explicitly found that the school district's proposed placement "had complied with the Act," 852 F.2d at 297, meaning that the total communication approach promised educational benefits to the child. In the face of this finding, the parents could not force adoption of what they perceived to be an even more effective educational program. Id.; accord Roland M., 910 F.2d at 993 (issue is whether school district's IEP struck an adequate and appropriate balance, not whether better or worse program existed); Gregory K. v. Longview School Dist., 811 F.2d 1307, 1314 (9th Cir.1987) (appropriate placement proposed by school district must be upheld even if family prefers another alternative). The school district had done all that the EHA required.
 
 
 21
 In this case, unlike Lachman, the district court and the hearing officers found that the school district's proposal simply would not meet the EHA requirement that the IEP be calculated to benefit Adam, because Adam's parents had already "poisoned" the option in Adam's mind. The district judge did not elect one alternative over another viable alternative based on the parents' preferences. The school district's proposed IEP was not acceptable or appropriate under the EHA, because the state of relations between the Brozers and the Board guaranteed its failure. Once it found that the district-proposed IEP would not benefit Adam, the court could not order its implementation under the EHA.
 
 
 22
 Lachman aside,[4] the district's larger point is well taken. Allowing a consideration of parental hostility to a state-proposed IEP to the extent that it limits the IEP's benefit to the child will result at times in the rejection of the school district's proposal simply because the parents, perhaps irrationally, oppose it. The plaintiff school district here exhorts us not to adopt a position that will "reward" parents for aberrant or distasteful behavior. Under the EHA, however, our concern is not rewarding or punishing parents. The appropriate concern is finding a program which will be of educational benefit to the child. Were we to adopt the school district's position and hold that parental attitudes can never be considered even if they have impaired the workability of the IEP for the child, this would in effect be punishing children for the actions of their parents. A child whose parents oppose an IEP so vehemently and vocally as to "doom" its prospects should not be enrolled in the placement merely to enable educational agencies and federal courts to "discipline" parents. The EHA makes clear whose interest must be paramount.
 
 
 23
 Moreover, we do not share the school district's concern that under our ruling parents will be able to feign opposition to obtain their preferred placement. Our ruling does nothing to alter the ability of hearing officers to make credibility determinations in the first instance. Hearing officers are best positioned to assess whether a family's hostility is manufactured or whether parental attitudes pose a real threat to the success of the proposed IEP. Their findings are thus entitled to "due weight" by a district court on appeal. Under the regime established by the EHA, the district courts also retain the ability to test the parents' sincerity if it remains a viable issue on appeal to federal court, for they are allowed to hear additional evidence at either party's request. See 20 U.S.C. Sec. 1415(e)(2). This Court is obligated to give any factual finding that emerges from this process deferential "clear error" review, whether the district court finds that the parents' obstructionist attitude will have little real effect on the child's education or, as in this case, that the parents' hostility is so entrenched as to preclude hopes for the proposed IEP.[5]
 
 
 24
 We conclude that it is permissible to consider parental hostility to an IEP as part of the prospective evaluation required by the EHA of the placement's expected educational benefits. If the facts show that the parents are so opposed to a placement as to undermine its value to the child, there is no obligation under the EHA to order the placement. The district court rightly held that the BEC/Jack London placement did not meet the substantive standard set by the EHA and that the IEP ordered by the Level II hearing officer is the least restrictive placement that will be of educational benefit to Adam.[6]
 
 
 25
 The judgment of the district court is affirmed.
 
 
 26
 WOOD, Jr., Circuit Judge, dissenting.
 
 
 27
 The majority opinion fairly sets forth the problem in this case, but I respectfully differ as to the result reached, and would reverse.
 
 
 28
 The Brozers, parents of Adam, have succeeded in dictating the educational result by their continued and extremely hostile attitude toward the plaintiff district board and its efforts in behalf of Adam. The district board is primarily responsible for Adam's development and education. The Brozers have been more disruptive of the educational process than has Adam, but Adam has serious problems that require and deserve specialized attention. Parents' concern for their children is, of course, understandable, commendable, and important and ordinarily deserves consideration by school authorities. In this case, however, parental involvement and obstruction have exceeded all reasonable bounds. There is no basis whatsoever to default the good faith and competent professional efforts and recommendations of plaintiff designed to serve the best educational interests of Adam. There is not the slightest evidence of any legal or educational failure by plaintiff. There is not the slightest evidence that its proposed placement for Adam was improper or would not have met the goals and objectives under the applicable laws.
 
 
 29
 The majority reminds judges that we are not trained educators. We are not trained, however, in many things that we must pass on in some respect, but we need not be. I do not need to be a professional educator to see that educational decisions and responsibilities have been improperly surrendered to the Brozers who are not trained educators either. The plaintiff has carefully, considerately, and professionally sought to aid Adam only to be thwarted by the Brozers.[1] If the parents had not so vehemently and continually obstructed their child's special education there might be much less of an educational or behavioral problem now.
 
 
 30
 The requirements of Board of Education v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), were fully satisfied by plaintiff. The necessary procedures were followed and the individual educational programs developed by plaintiff for Adam were reasonably calculated to enable Adam to receive educational benefits. Those programs should have been given a chance. The Brozers, as it is, have been allowed what is in effect an absolute veto over the plaintiff's proposed educational program. I would follow the general principles we set forth in Lachman v. Illinois State Board of Education, 852 F.2d 290 (7th Cir.), cert. denied, 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988), another case in which there was a disagreement between parents and the school district. The parents in this present case have carried parental involvement to an extreme far beyond all reasonable bounds. To approve of this unreasonable parental interference will precedentially cause school authorities additional future problems they do not need.
 
 
 31
 The Brozers should have stepped aside and supported, not disrupted, plaintiff's careful efforts for their child's education. By their unreasonable interference and obstruction the Brozers have gained control over the educational process. The majority approves, but I cannot.[2] I respectfully dissent.
 
 
 
 [1]
 1990 amendments have renamed the EHA. It is now the Individuals with Disabilities Education Act. See Pub.L. No. 101-476, 104 Stat. 1141
 
 
 [2]
 Defendants note that our jurisdiction is doubtful because the district court left a counterclaim asserted by the Brozers unresolved. A pending counterclaim ordinarily prevents a judgment from being final and thus precludes appeal. In re Berke, 837 F.2d 293 (7th Cir.1988). However, if it is clear that the work of the district court is finished, a notice of appeal can be effective in spite of formal difficulties in the judgment. See Trzcinski v. American Casualty Co., 901 F.2d 1429, 1431 (7th Cir.1990). Here the parties have represented that they have settled the counterclaim and thus we find appellate jurisdiction
 
 
 [3]
 The state of Illinois has established a set of procedures parallel to those contained in the EHA to ensure that it meets the requirements of the Act. Compare 20 U.S.C. Sec. 1401, 1415 with Ill.Rev.Stat. ch. 122 pp 14-1.02, 14-8.02. The school district's appeal is based on Illinois state law as well as on the federal statute. We will not engage in a separate analysis of the state law claim
 
 
 [4]
 The other cases cited by the school district are inapposite. Cain v. Yukon Public Schools, Dist. I-27, 775 F.2d 15 (10th Cir.1985), and Roland M. v. Concord School Comm., 910 F.2d 983 (1st Cir.1990), deal with the circumstances under which parents' actions may disqualify them from challenging the state's compliance with procedural requirements of the EHA. Doe v. Defendants I, 898 F.2d 1186 (6th Cir.1990), merely emphasizes that an IEP is evaluated prospectively and not in hindsight under the EHA. An IEP reasonably calculated to benefit the child cannot later be deemed inappropriate simply because of attempts by the parents after implementation to thwart its success. Doe says nothing about a case in which parental opposition is anticipated at the outset to make benefits to the child impossible. Evans v. District No. 17, 841 F.2d 824 (8th Cir.1988), holds that parents cannot complain about the substantive adequacy of an IEP if they remove their child from the school district without requesting an IEP
 
 
 [5]
 The dissent simplifies the disagreement in this case by characterizing it as one "between parents and the school district," see infra at 719, implying that the district judge and the majority here have sided with the parents and wholly against "school authorities." Id. The Illinois State Board of Education is a defendant here with the Brozers. It is worth reiterating that two educational authorities, the hearing officers employed and trained by the Illinois State Board of Education to preside over administrative appeals, see Ill.Rev.Stat. ch. 122 p 14-8.02(g), found the proposed IEP incapable of conferring educational benefits prior to the district judge's ruling, and that we and the district judge have come to the same conclusion partly in deference to that finding and their expertise
 
 
 [6]
 The propriety of Adam's temporary private day placement in the Jeanne Schultz Memorial School in Park Ridge, Illinois, pending the resolution of this appeal is not at issue and we express no opinion thereon
 
 
 [1]
 One hearing officer made a factual finding that in the recent past the Brozers had temporarily rewarded their disturbed son for something he had done by giving him a gun
 
 
 [2]
 In view of footnote 5 of the majority opinion some clarification is needed
 The defendant Illinois State Board of Education filed an answer in the district court in which to the substantive issues it pleaded either lack of personal knowledge, or it deferred to the administrative record. However, in an affirmative defense the state board alleges its only obligation is to appoint an impartial hearing officer, which it did. The state board also explicitly alleges that it has "no interest or position regarding the merits or the underlying dispute between the parties." It appears the state board also views this controversy as one between the district and the parents. In this court the state board did not file a brief or appear at oral argument nor did the Level II hearing officer, Douglas C. Cannon, also named as a defendant. This is an appeal by the plaintiff district from the decision of the Level II hearing officer, Mr. Cannon, who deferred to the Brozers. So it is that I view this case in reality as a case between the Brozers and the district board regardless of whom plaintiff named as defendants.
 The Level II hearing officer stated that he could "in no way condone the parents' conduct in this matter which can be described at best as being obstructionist and undermining the efforts of the School District to assist their son," and further he found that the school district's proposed placement has been "poisoned" in the mind of the student by his parents. The Level II hearing officer also had his own problems with Mrs. Brozer as she expressed her displeasure at any adverse evidentiary ruling made against her counsel, and had to be admonished. That admonishment only reduced but did not eliminate the problem. The hearing officer characterized the Brozers as having a "siege mentality" which in no way could be charged to the district. However, the hearing officer unfortunately then went ahead and based his decision on the conduct of the Brozers. He did urge them to work with Adam's educators, not against them. It was, he said, their "last chance."
 My only point is that the continually excessive obstructive conduct of the Brozers is not a valid reason to give in and do it their way. The district court carefully looked at and analyzed this difficult and unfortunate problem. I only differ with the result reached for the reason given. The district board, the hearing officers, the district court, and I all agree it was the parents' objectionable conduct which has forced this result. I simply would not approve of parental conduct as a legitimate basis for it. The district's careful plan should have been tried, but since that is not to be I hope that what is to be done for Adam will prove to be just what he educationally needs.