**GREENBUSH SCHOOL COMMITTEE,**
**Plaintiff,**

v.

**MR. AND MRS. K, on their own behalf**
**and on behalf of their minor son,**
**JK,**

**and**

**Wayne L. Mowatt, in his official capacity**
**as Commissioner of the Maine Depart-**
**ment of Education, Defendants.**

**Civil No. 95–199–B.**

United States District Court,
D. Maine.

Dec. 30, 1996.

---

Eric Herlan, Drummond, Woodsum, Plimpton & MacMahon, Portland, ME, for Plaintiff.

Cindy and James King, Greenbush, ME, pro se.

Dennis M. Doiron, Attorney General's Office, Augusta, ME, for Defendant Mowatt.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff, the Greenbush School Committee (hereinafter "Greenbush"), challenges the decision of the Education Hearing Officer (hereinafter "Hearing Officer") as to the proper placement of the Defendant, James King III, and names Wayne Mowatt, the Commissioner of the Maine Department of Education as a Defendant. Plaintiff asserts that the Hearing Officer exceeded his authority and thus violated the Individuals with Disabilities Education Act (hereinafter "IDEA" or "the Act"), 20 U.S.C. §§ 1400–1491, and Maine law, 20–A M.R.S.A. §§ 7001–8101.

In accordance with the appropriate standard of review, the Court affirms the decision of the Hearing Officer. The State Defendant is dismissed from the case.

### I. Background

This case involves the education of Defendant, James King III (hereinafter "James"), the son of Defendants Cindy and James King. The Defendants reside in Greenbush, Maine. At the time briefs were filed in this case, James was eleven years old. James has a learning disability that qualifies him for special education services under IDEA.

James attended the Helen S. Dunn School (hereinafter "Dunn"), a public school serving kindergarten through eighth grade children in Greenbush. The conflicts that give rise to this case reached a critical stage in March of 1994, James's third grade year. It was in March when James's parents requested that their son be removed from the Greenbush school. They believed the administration, teachers, students, and even James's bus driver were harassing their son to an extent that the environment at Dunn could not provide James with an adequate education.

The school did not agree that James should be transferred to a different school, however, it did give James special tutoring in the superintendent's office until further evaluation of James's special needs could be undertaken. James's tutoring continued for the remainder of the 1994 school year. A new individualized education plan (hereinafter "IEP") was developed for James's fourth grade year at Dunn. In late August or early September 1994, James's parents took him out of Dunn in favor of a home schooling curriculum. In March 1995, the Kings informed Greenbush that James no longer was being home schooled and again requested that James be allowed to attend a different public school. The parents asked that James attend the East Corinth school system, which is approximately thirty miles away from Greenbush. Greenbush again denied the parents' request.

Defendants next requested an administrative due process hearing as provided under IDEA. In preparation for this hearing, Greenbush developed a new IEP for James's 1995–1996 school year. Under the new plan, James would remain at Dunn. This new IEP also called for a combination of special education services as well as participation in the regular fifth grade curriculum with James's peers, who are not learning disabled. The plan also implemented the talents of Dr. Norman Worgull, a psychologist who evaluated James's special needs and apparently had obtained the respect and confidence of the King family. Dr. Worgull was to serve as a liaison between the King family and the school. Greenbush also developed a complaint process through which the school would investigate any incidents arising between James and his peers or teachers. Greenbush argued before the Hearing Officer, and continues to argue here, that turnover in Dunn personnel, including the principal of the school, with whom the Kings had significant disagreements, makes it more likely that the Kings and the school can work cooperatively to educate James. Greenbush also was willing to provide the Kings with the enrollment lists for Dunn's two fifth grade

classes and allow the parents to choose which class James would attend. This was an attempt by the school to minimize James's contact with the students who were harassing him.

The due process hearing was held on July 17 and July 28, 1995. The issue for hearing was "[c]an James King III receive an appropriate education in the Greenbush School Department." Hearing Officer Decision, slip op. at 3. The Hearing Officer concluded that even with the changes in Dunn's staff, the long standing negative feelings that the Kings have toward the school will "negate the beneficial effects of [James's] educational program if it is implemented" at Greenbush in the Dunn building. *Id.* at 4–5.

> I am left to conclude that [James] must have his IEP implemented at a location other than Helen S. Dunn School as my focus must be to ensure that [James] receives an education which is of benefit to him.

*Id.* at 5.

The Hearing Officer ordered that Greenbush implement James's 1995/1996 IEP at a school other than Dunn. Choice of the new school was left to the discretion of the Greenbush administration, however, Greenbush was required to consider three factors in making the new placement: first, the time and distance which James must travel; second, the availability of existing transportation; and third, the willingness of the receiving building and school department. *Id.* The Hearing Officer's decision also allowed Greenbush to end the new placement at any time if it feels that parental support for the new placement deteriorates to the point where the benefit to James's education is lost. *Id.* If Greenbush determines that such parental support no longer exists, James must return to Dunn. *Id.*

Greenbush filed this case challenging the Hearing Officer's determination. During the pendency of this action, Greenbush has complied with the Hearing Officer's Order as required by law. *See School Committee of the Town of Burlington v. Department of Education for the Commonwealth of Massachusetts,* 471 U.S. 359, 371–372, 105 S.Ct. 1996, 2003–2004, 85 L.Ed.2d 385 (1985).

In addition to the Kings, Greenbush named Wayne L. Mowatt, the Commissioner of the Maine Department of Education, as a Defendant in this action. Greenbush claims the joinder of the Department of Education is necessary on the unlikely contingency that the local education agency is unable to carry out the Court's Order. The Department of Education claims that it should be dismissed from the case because the state has taken no action against Plaintiff for which relief can be granted, and there is no basis for injunctive relief against the state. The Department of Education claims that it is required by the State's enforcement obligations under IDEA to implement the Court's Order. The Department of Education also argues that the Hearing Officer's determination was proper.

## II. Standard of Review

■ The Court's review of the Hearing Officer's decision in this case falls between *de novo* and clear error review. *See, e.g., Lenn v. Portland School Committee,* 998 F.2d 1083, 1086 (1st Cir.1993); *Brougham by Brougham v. Town of Yarmouth,* 823 F.Supp. 9, 14 (D.Me.1993). Many courts in various circuits, including the First Circuit, have noted that judges are not trained as educators. The statutory scheme of IDEA requires district courts to give due weight to the state administrative decisions in IDEA cases so that judges are not "imposing their view of preferable educational methods upon the states." *Hendrick Hudson Board of Education v. Rowley,* 458 U.S. 176, 207, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982); *see also Roland M. v. Concord School Committee,* 910 F.2d 983, 989 (1st Cir.1990), *cert. denied,* 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991); *Board of Education of Community Consolidated School District No. 21 v. Illinois State Board of Education,* 938 F.2d 712, 715 (7th Cir.1991), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 957, 117 L.Ed.2d 124 (1992).

The law dictates that the district court:

> ... shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of

the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2). The First Circuit has characterized the district court's role as one of "involved oversight." *See Roland M.,* 910 F.2d at 989.

"[T]he Act contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial," and obligates the court of first resort to assess the merits and make an "independent ruling based on the preponderance of the evidence."

*Id.* (quoting *Town of Burlington v. Department of Education for the Commonwealth of Massachusetts,* 736 F.2d 773, 790 (1st Cir. 1984), *aff'd,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)).

The Court's standard of review can be synthesized as follows. First, the Court carefully reviews the entire record of the due process hearing. Second, appropriate deference is given the Hearing Officer and his expertise, particularly with regard to factual determinations. Finally, the Court makes an independent decision whether the Hearing Officer's determination is supported by a preponderance of the evidence. The Court may also account for additional facts presented by the parties should it find such facts credible and supported by the evidence on the record. *See* 20 U.S.C. § 1415(e)(2).

### III. Due Process Hearing

#### A. Legal Background

Should it wish to qualify for federal funding under IDEA, a state must provide all children with disabilities a "free appropriate public education." 20 U.S.C. §§ 1400(c), 1412(1). Such "appropriate" education must be one that is tailored to meet the specific child's "unique needs" in a way "reasonably calculated to enable the child to receive educational benefits." 20 U.S.C. § 1400(c); *Rowley,* 458 U.S. at 206–207, 102 S.Ct. at 3051. In addition, the public education required under the law must be implemented in the least restrictive educational environment. *See* 20 U.S.C. § 1412(5)(B).

The curriculum for providing a disabled child's public education under the Act is developed annually by a team of people familiar with the child's special educational needs. Based on input from various sources, including evaluations of the child's disability and recommendations from both teachers and parents, this team develops an annual IEP for the student. *Id.* §§ 1401(a)(20), 1414(a)(1)(A), 1414(a)(5). In Maine, the team delegated responsibility to develop a student's IEP is referred to as the pupil evaluation team (hereinafter "PET"). *See* Me. Dep't of Educ. Reg. ch. 101, § 1.4 (April 1996).

Parents who disagree with the PET's IEP for their child have a right under the Act to an administrative hearing to determine if the IEP is appropriate for their student. *See* 20 U.S.C. §§ 1415(b)(2), 1415(c). If the parents or the school desires, the Act provides a right of action to challenge the administrative hearing in either state or federal court. *See id.* § 1415(e)(2).

#### B. Hearing Officer's Authority Under Law

The Supreme Court's *Rowley* decision set forth a two part test to determine whether a student is receiving an appropriate free public education under IDEA. A hearing officer must scrutinize a child's IEP to determine whether it meets the requirements of this test:

First, has the state complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits.

*Rowley,* 458 U.S. at 206–207, 102 S.Ct. at 3051. It is uncontested that the Hearing Officer's determination complied with all procedures applicable under federal and state law. The controversy is whether the administrative determination correctly found that James's IEP was not reasonably calculated to enable James to receive educational benefits.

In assessing the IEP this Court is guided by the First Circuit's *Lenn* decision.

The IDEA does not promise perfect solutions to the vexing problems posed by the existence of learning disabilities in children

and adolescents. The Act sets more modest goals: it emphasizes an appropriate, rather than an ideal, education; it requires an adequate, rather than an optimal, IEP.... [A]n IEP must afford some educational benefit to the handicapped child, the benefit conferred need not reach the highest attainable level or even the level needed to maximize the child's potential.

*Lenn,* 998 F.2d at 1086 (citing *Rowley,* 458 U.S. at 198, 102 S.Ct. at 3046–3047; *Roland M.,* 910 F.2d at 992). Greenbush's IEP does not have to provide James with the best possible education but, rather, one that is reasonably calculated to provide him with an educational benefit.

The Act also has a preference for mainstreaming disabled students. A student's IEP should be targeted to achieve the child's education in the least restrictive setting. *See* 20 U.S.C. § 1412(5)(B); *Roland M.,* 910 F.2d at 992–993 ("Mainstreaming may not be ignored, even to fulfill substantive educational criteria."). In keeping with the mainstreaming preference IDEA's regulations require that public schools ensure that the placement of a disabled child "[i]s as close as possible to the child's home." 34 C.F.R. § 300.552(a)(3). Whenever possible, the child should be "educated in the school that he or she would attend if nondisabled." *Id.* § 300.552(c). The default placement for a student under the Act is his or her local school, however, an IEP can override this default in situations where the student would not receive an educational benefit at the local school. A hearing officer is guided by these competing concerns in his review of a child's proposed IEP.

## C.  Parental Hostility

The Hearing Officer in this case concluded that James's parents' hostility toward Greenbush would negate any educational benefits which James would otherwise receive if he remained enrolled at Dunn. *See* Hearing Officer Decision, slip op. at 4–5. Although there are certain findings of fact in the determination which indicate that James's tenure at Greenbush was difficult for the child, the Kings' hostility and distrust of Greenbush was clearly the determining factor for the Hearing Officer's order that James spend his 1995/1996 school year at a different school. The decision states that the parents' "negative feelings seem to me to have taken on a life of their own and appear little influenced by factual information." *Id.* at 4.

Greenbush argues that it was improper for the Hearing Officer to consider the Kings' hostility toward James's local school in analyzing the educational benefits that the child would receive under his IEP.[1] In summary, Plaintiff's argument is that the Hearing Officer's decision allows parents a veto over their child's placement within the school system. Plaintiff correctly states that under both federal and Maine law a team approach is used to determine the specific needs of the disabled child, and parental preferences should not trump team decision-making. *See, e.g.,* 20 U.S.C. § 1401(a)(20); Me. Dep't of Educ. Reg. ch. 101, §§ 8.1–8.24 (April 1996). Although parents are allowed recourse through the hearing process and the courts if they disagree with the PET team curriculum for their child, deference is accorded the judgment of educators when determining the appropriate program for a disabled student. *E.g., Rowley,* 458 U.S. at 207, 102 S.Ct. at 3051 ("[P]rimary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child.").

---

1. Greenbush also argues that the Hearing Officer's decision should be invalidated because there was no finding of fact that James's IEP was inappropriate under the law. Greenbush claims the fact that the Hearing Officer ordered implementation of James's IEP, without edit, at a different school proves that the IEP was reasonably calculated to provide James with educational benefit. Greenbush states that "the absence of dispute on the content of the IEP should have led to a decision for Greenbush." Plaintiff's Memorandum of Law at 11 (June 18, 1996).

Plaintiff's argument ignores a key factor. James's IEP called for his enrollment at Dunn. In the Hearing Officer's determination, this was the critical flaw of the plan. The conclusion of the administrative decision is that James cannot receive educational benefit if he attends Dunn for the 1995/1996 school year. The Hearing Officer made a finding attesting to this fact.

Greenbush asserts that the Hearing Officer's decision gives parents the power to circumvent this rule. It argues that any parent involved in a due process hearing that finds its way into federal court pursuant to IDEA's dispute settlement provisions feels strongly that his or her child's IEP is improper and is probably very angry with the school system. Greenbush claims that the Hearing Officer's decision, if taken to its logical extreme, requires decisions in favor of all angry parents who request due process hearings for their children. *See* Plaintiff's Memorandum of Law at 27 (June 18, 1996).

■ Parents clearly do not have the right under IDEA to determine the content of their child's curriculum. *See Lachman v. Illinois State Board of Education*, 852 F.2d 290, 297 (7th Cir.1988), *cert. denied*, 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988); *Brougham by Brougham*, 823 F.Supp. at 16; *Petersen v. Hastings Public Schools*, 831 F.Supp. 742, 750 (D.Neb.1993), *aff'd*, 31 F.3d 705 (8th Cir.1994); *Dreher v. Amphitheater Unified School District*, 797 F.Supp. 753, 756 (D.Ariz.1992), *aff'd*, 22 F.3d 228 (9th Cir. 1994). Neither the U.S. Congress nor the Maine Legislature has authorized parents to send their children to the school of their choice at the public's expense.[2] Greenbush believes that the Hearing Officer's decision gives parents who are angry with their school system greater rights than parents who reject their local public school for other reasons, such as philosophical or religious differences.

Plaintiff's arguments face two difficult hurdles: first, the facts of this case as set forth in the Hearing Officer's decision and, second, the Seventh Circuit's *Board of Education of Community Consolidated School District* opinion.

### 1. The Facts

After hours of testimony and review of nearly 100 exhibits, the Hearing Officer determined that the parties had reached a point where James could no longer receive any educational benefit from attending Dunn.

*See* Hearing Officer Decision, slip op. at 4–5. The Hearing Officer clearly knew, and indicated in his determination, that the proper focus of his inquiry under the law was assuring that James receives an education that is beneficial to him. *See id.* at 5 ("[M]y focus must be to ensure that [James] receives as education which is of benefit to him."). Greenbush argues that because of changes in the Greenbush staff and other special considerations incorporated into James's IEP, James could have received educational benefit at Dunn. However, the Hearing Officer's determination to the contrary on this point is supported by the record.

The Kings continue to have feelings of great animosity toward the Greenbush school system, which, despite certain special considerations and accommodations made by the school system, would continue to hamper significantly James's education at Dunn. The Hearing Officer took the changes in Dunn's staff, as well as Greenbush's new complaint procedures and all other accommodations made by Greenbush, into account in his determination and reached the proper conclusion. James was clearly having a difficult time at Dunn. All parties agree that he was exhibiting behavioral difficulties, and one need only read the testimony before the Hearing Officer to conclude that all three Kings strongly believe that James was unfairly ostracized and persecuted by his peers and educators at Dunn. The Hearing Officer's decision that the Kings' hostility toward the school prevented James from receiving an education that is of benefit to him is supported by the record.

### 2. The Law

Since the facts on the record from the due process hearing support the Hearing Officer's decision, the question becomes: can parental hostility be a proper basis to invalidate a child's IEP and order a school system to send the child to another school? The Seventh Circuit's *Board of Education of Community Consolidated School District* de-

---

**2.** There is one school choice option in Maine. In certain circumstances, parents may chose to send their children to the math-science school in Limestone, Maine. *See* 20–A M.R.S.A. §§ 8201–8202. This fact, however, is not relevant to the Court's decision here.

cision deals with this issue.[3] In *Board of Education of Community Consolidated School District,* two hearing officers[4] and the district court determined that the extremely adversarial relationship between the parents and the school district condemned the disabled child to an unsatisfactory education unless he was placed in a school other than the school designated by his IEP. *Board of Education of Community Consolidated School District,* 938 F.2d at 714, 716. Just as Greenbush did here, the school board appealed the use of parental hostility as a rationale for determining that a disabled child could not receive educational benefit at his assigned school.

The Seventh Circuit held, over one dissent, that parental anger can be an appropriate basis to invalidate a child's placement.

> The sole legal requirement is that the IEP be designed to serve the educational interests of the child. The [IDEA] does not limit the factors that can be considered in judging the likely impact of the IEP on the child so long as they bear on the question of educational benefits. In this case the district court made a factual finding that the parents' attitudes were severe enough to doom any attempt to educate Adam at [the school assigned him by his IEP.] This finding had obvious and direct relevance to any assessment of the probable benefit to Adam of [his] placement.

*Id.* at 716. The school district in *Board of Education of Community Consolidated School District* made arguments almost identical to Greenbush's.

> The plaintiff school district here exhorts us not to adopt a position that will "reward" parents for aberrant or distasteful behavior. Under [IDEA,] however, our concern is not rewarding or punishing parents. The appropriate concern is finding a pro-

gram which will be of educational benefit to the child.

*Id.* at 717. The Seventh Circuit effectively isolates one of the flaws in Greenbush's argument. Greenbush claims that the Hearing Officer unfairly focused on James's parents. This is not true. He focused on the effect that the parents' hostility would have on James if he remained at Dunn. The focus was, and should be, on the child. Hearing officers and courts are not called upon to assign blame to the respective parties, in order to determine who is more at fault for the conflict. Our responsibilities under the Act are, fortunately, much less complicated. Focusing on the child, we must determine whether his or her IEP and school placement offer educational benefit. If not, the plan does not satisfy the requirements of IDEA or the Supreme Court's *Rowley* decision.

Greenbush's argument that the Hearing Officer's decision gives parents veto power over their child's placement or that angry parents have more rights regarding their child's placement than do others ignores the Hearing Officer's important and significant role in the due process hearing. The *Board of Education of Community Consolidated School District* court effectively answers this concern.

> [W]e do not share the school district's concern that under our ruling parents will be able to feign opposition to obtain their preferred placement. Our ruling does nothing to alter the ability of hearing officers to make credibility determinations in the first instance. Hearing officers are best positioned to assess whether a family's hostility is manufactured or whether parental attitudes pose a real threat to the success of the proposed IEP.

*Id.* at 718.

Greenbush argues that the Seventh Circuit decision was wrong under the law. For the

---

**3.** This is the only case cited by the parties dealing with use of parental hostility to warrant alternative placement of children under the Act. *Board of Education of Community Consolidated School District* deals with the Education of the Handicapped Act, 20 U.S.C. § 1400, *et seq.,* however, the 1990 amendments to the Education of the Handicapped Act renamed the Act to its current name, IDEA.

**4.** In Illinois, there is a right of appeal from the first hearing officer's decision to the state educational agency, hence, the parents in *Board of Education of Community Consolidated School District* had two administrative hearings prior to federal court review.

reasons discussed above, this Court feels that *Board of Education of Community Consolidated School District* accurately reflects the law under IDEA.

Greenbush also attempts to distinguish the *Board of Education of Community Consolidated School District* case from the situation before the Court here. The student in the Seventh Circuit case was having such significant behavioral problems that people could not control him and his grades were on a downward spiral. In this case, there is evidence on the record of the due process hearing that indicates that James's grades were good and that he was testing well. Also, although he did have some behavioral problems at school, he certainly was controllable unlike the child in *Board of Education of Community Consolidated School District*.[5] For many of the same reasons discussed in section III.C.1, above, the Court declines to overrule the Hearing Officer's findings on this point. The evidence on the record regarding the animosity between the Kings and Greenbush and its effect on James's education clearly supports, by a preponderance of the evidence, the Hearing Officer's decision.

### D. James's Anxiety and Fears

■ The focus of IDEA is on children with disabilities. The purpose of the Act is "meeting the educational needs of children with disabilities." 20 U.S.C. §§ 1400(b)(9), 1400(c). The students individualized program under the law is to be:

> developed in any meeting by a representative of the local government agency, ... the teacher, the parents or guardian of such child, and, whenever appropriate, such child.

**5.** Plaintiffs state that "James on occasion demonstrated challenging behaviors during his 1993–94 school year." Plaintiff's Memorandum of Law at 2 (June 18, 1996).

**6.** Plaintiff implies that James made up this story, stating that it was "disproved by *all* other witnesses who addressed the issue." Plaintiff's Memorandum of Law at 14 n. 8 (June 18, 1996). The Court does not dismiss James's statements so quickly. The child clearly knew the importance of the due process hearing, which was an adversarial proceeding with numerous adults examin-

*Id.* at § 1401(a)(20). Although the Hearing Officer understood that the focus of his review of James's IEP was on whether the educational program benefited James, he did not find that James's fears of attending Dunn prevented the child from any educational benefit at the school. The Hearing Officer did find that James felt the students and staff were mean to him and that a significant conflict continues to exist between the King family and Greenbush. *See* Hearing Officer Decision, slip op. at 4. However, he also found the James's negative feelings about Greenbush are not, alone, strong enough to prevent the child from benefitting from his education at Dunn. *Id.*

Given the Act's clear mandate to focus all decision making—by the PET, the Hearing Officer, and the Court—on the educational benefit conferred on the disabled child, the Court carefully examined James's testimony from the due process hearing, as well as the testimony of others regarding James's feelings about Dunn. The child clearly has significant anxieties about returning to Dunn. He recounts incidents where Dunn teachers, administrators, and his peers harassed him. *See, e.g.,* Due Process Hearing Transcript (hereinafter "Transcript") at 33. Among the incidents that he recounts is a situation where the principal and a teacher carried him out of a classroom, threw him around, and held him down on the floor. *Id.* at 40. In another, James states that he was forced to clean off a urinal after another child had used it, a task which obviously was not normally assigned to students.[6] *Id.* at 37, 39. At one point during his direct examination about the abuse he suffered at the hands of his classmates, a recess was taken because James began to cry. *See* Transcript at 36.

ing and cross-examining him. He was, in fact, administered an oath. Transcript at 32. Despite the intimidating setting of the due process hearing, James recounted the urinal incident on two occasions. Even if the Court were to assume that James lied, which it does not, the fact that he would lie, twice, in such a setting itself would be very telling. Any child who would make up such a story in this situation must be dealing with a consuming fear, a fear which severely curtails his education.

Plaintiff correctly states that the Court must strictly avoid the clear error standard of review. The Court can hear new evidence from the parties and make additional findings of fact in making an "independent ruling based on the preponderance of the evidence." *Roland M.*, 910 F.2d at 989. The Court is, however, also aware that the Hearing Officer is in the best position to analyze the facts of this case and that the Court's review is not *de novo*. In this case, particularly given the clear mandate of the Act to focus all decision making on the educational benefit to be afforded the child, James's testimony was not given sufficient weight by the Hearing Officer. This is not a child who simply does not like his school or his peers. James has a gripping fear that accompanies him throughout his day at Dunn. The Court finds that James's fear of the Dunn school would prevent him from receiving an educational benefit if his IEP were implemented at that school.

This fact, in addition to the Hearing Officer's finding regarding the extent of the Kings' hostility toward Greenbush, mandates affirmance of the Hearing Officer's decision.

### IV. State Department of Education

Given the Court's determination in this case and for the reasons set forth in section I of the Memorandum of Law of Defendant Wayne L. Mowatt, Commissioner of the Maine Department of Education, Defendant Wayne L. Mowatt is dismissed as an unnecessary party to this action.

### V. Conclusion

The Court finds the Hearing Officer's decision to be reasonable and balanced. Not only is the additional cost kept to a minimum by the short distance that James is bussed to his new school, but the Hearing Officer created specific incentives for the Kings to work amicably with James's new school, and, to a certain extent, with Greenbush. If Greenbush feels that "parental support for the new placement has deteriorated to a point where the benefit of the 'new' placement has been lost" it may end James's placement. Hearing Officer Decision, slip op. at 5.

The Hearing Officer's decision is reasonable, supported by the evidence, and therefore, AFFIRMED.

*SO ORDERED.*